George A. **WEIDNER**, Petitioner,

v.

Louie L. **WAINWRIGHT**, Secretary, Department of Offender Rehabilitation, State of Florida, Respondent.

No. 82–5122
Non-Argument Calendar.

United States Court of Appeals,
Eleventh Circuit.

June 27, 1983.

Peggy A. Quince, Asst. Atty. Gen., Tampa, Fla., for respondent.

---

James D. Whittemore, court-appointed, c/o Whittemore & Campbell, P.A., Tampa, Fla., for petitioner.

Before HILL, KRAVITCH and HENDERSON, Circuit Judges.

JAMES C. HILL, Circuit Judge:

The sole issue raised by this appeal of the district court's grant of habeas corpus relief is whether petitioner George Weidner was denied his constitutional right of effective assistance of counsel.

Weidner was convicted in state court of second degree murder. The conviction was affirmed on direct appeal and Weidner subsequently was denied post conviction relief by the state court.[1] Having fully exhausted his state remedies, Weidner filed a writ of habeas corpus in the district court. The matter was referred to a magistrate who recommended granting the requested relief. The district court adopted the recommendations of the magistrate and the state now appeals. We affirm.

At trial, it was established that the victim was shot in the parking lot of the Greyhound Bar in Tampa, Florida. Weidner, a patron of the bar, was approached by the victim Joey Motz and four or five of Motz's friends. Although Weidner was intoxicated at the time, he managed to retrieve a gun from his car. With the gun in hand, he warned Motz and his friends not to come closer. Apparently Motz did not heed the warning, but instead jumped on Weidner's car. In the ensuing moments Weidner somehow shot and killed Motz.

The state's theory of the case was that Weidner was the aggressor, and that he shot while Motz was still standing on the car. Weidner maintains that Motz was attacking him when the shot was fired. At trial, Weidner's privately retained counsel, Harry M. Hobbs, argued a theory of accident or alternatively excusable homicide. A self-defense theory was mentioned in passing, and an instruction on the defense was given by the court; however, self-defense was never argued seriously to the jury. This was despite the fact that Weidner had told Hobbs that he was attacked and that his money was missing when he arrived at the police station.[2]

The magistrate found that prior to Weidner's trial Hobbs did not hire an investigator nor did he send an associate of the firm to the scene of the shooting. Hobbs may have gone to the bar himself to survey the location, however, he neglected to interview potential witnesses. Hobbs did not acquire a copy of the autopsy report, nor did he depose the medical examiner or the arresting officer. The magistrate also noted that Hobbs' theory of excusable homicide was precluded by Florida Statute § 782.03 which defines excusable homicide as homicide "without any dangerous weapon being used." Excusable homicide was therefore implausible because all agreed that Weidner had a gun.

In *Washington v. Strickland,* 693 F.2d 1243 (5th Cir. Unit B 1982) (en banc), *petition for cert. filed,* 51 U.S.L.W. 3704 (U.S. March 21, 1983) (No. 82–1554), the court concluded that to prevail on a claim of ineffective assistance of counsel in a habeas corpus proceeding, a petitioner must demonstrate both a denial of effective assistance of counsel, and showing of substantial prejudice to his defense. 693 F.2d at 1258.[3]

---

1. Weidner's conviction was affirmed on direct appeal in *Weidner v. State,* 318 So.2d 502 (Fla. 2d Dist.Ct.App.1975) and *Weidner v. State,* 322 So.2d 671 (Fla. 2d Dist.Ct.App.1975). His attempted post-conviction relief was denied in *Weidner v. State,* 352 So.2d 181 (Fla. 2d Dist. Ct.App.1977) and *Weidner v. State,* 341 So.2d 302 (Fla. 2d Dist.Ct.App.1976).

2. The State maintains that Weidner's scars and bruises were attributable to a beating after the shooting.

3. The Sixth Amendment's guarantee of effective assistance of counsel applies equally to retained as well as appointed counsel. *Cuyler v. Sullivan,* 446 U.S. 335, 344–45, 100 S.Ct. 1708, 1716, 64 L.Ed.2d 333 (1980); *Goodwin v. Balkcom,* 684 F.2d 794, 804 (11th Cir.1982),

In support of his petition, Weidner asserts several acts and omissions on the part of the attorney. Moreover, his attorney does not controvert many of the allegations. Hence we first determine whether the acts and omissions complained of resulted in actual and substantial prejudice to the course of Weidner's defense. *See Stanley v. Zant,* 697 F.2d 955, 958 (11th Cir.1983); *Washington,* 693 F.2d at 1262. In other words, we must carefully evaluate the record to determine whether Weidner's situation at trial would have been materially improved had the attorney done the things Weidner asserts should have been done. Upon such a review, we find that Weidner's defense was substantially prejudiced by the alleged acts and omissions of Weidner's attorney.

Once the trial was completed, four witnesses were discovered whose testimony would have supported Weidner's self-defense theory. Clifford Schultz testified before the magistrate that it was generally known that Weidner carried large amounts of cash to the bar, as he did the night of the shooting. Schultz further testified that he overheard Motz and his friend plan to rob Weidner. Dorothy Walker, who also was present the night of the shooting, would have testified that Weidner had a large amount of cash, that it was generally known that Motz robbed patrons of the bar, and that Motz went outside to rob Weidner the night of the shooting. Glen Allen would have testified that the men at the bar, including Motz, were going to rob Weidner. And finally John Priestly would have testified that Motz confided in him that he had previously robbed Weidner.

It takes no elaboration for us to hold that the presence of these witnesses would have been so beneficial to Weidner's asserted theory of self-defense as to place his conviction in doubt. This case cried out for a theory of self-defense; however, without the necessary witnesses Hobbs struggled to argue accident and the legally implausible defense of excusable homicide. Hobbs' failure to obtain the autopsy report or to interview the medical examiner also prejudiced

Weidner's defense. The autopsy report indicated that the bullet travelled a slightly downward projectory through Motz's body. This conflicted with the states version that Motz was shot while on top of the car. Concluding that these acts and omissions grievously prejudiced Weidner's defense, we next turn to whether the source of this prejudice was ineffective assistance of counsel.

"At the heart of effective representation is the independent duty to investigate and prepare." *Goodwin v. Balkcom,* 684 F.2d 794, 805 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 1798, 76 L.Ed.2d 364 (1983). "Therefore, permissible trial strategy can never include the failure to conduct a reasonably substantial investigation into a defendant's one plausible line of defense." *Washington,* 693 F.2d at 1252. The record clearly indicates that Hobbs inadequately investigated and prepared the case. Both Hobbs and Weidner testified before the magistrate that prior to trial Weidner had told Hobbs that Motz and his friends had beaten and robbed Weidner of his watch and a substantial amount of money. They further testified that Weidner told Hobbs that Weidner had gotten the gun out of his car and that the gun had gone off as Motz had jumped down on him from the top of the car. Hobbs admitted that Weidner's version of the offense was more in line with the theory of self-defense; however, Hobbs failed to use the information given to him by Weidner to develop the defense properly. Although Hobbs originally indicated that he had sent a private investigator or one of his associates to the Greyhound Bar to verify Weidner's story, he later admitted that he was mistaken and that no one had been sent to the bar. Hobbs then testified that he went to the bar himself to observe the physical layout of the parking lot, but his records do not reveal this personal investigation. Yet even if he did go to the bar, Hobbs admits that he failed to interview any of the bartenders or barmaids present. Hence his investigation did not include an effective search for witnesses to support

Weidner's version of the facts. Moreover, Hobbs' failure to interview the medical examiner and the arresting officer or to pursue efforts to obtain a copy of the autopsy report all suggest that the pretrial investigation into Weidner's most plausible defense was woefully inadequate.[4]

We therefore conclude that the acts and omissions asserted by Weidner substantially prejudiced his defense and that this prejudice was attributable to the ineffectiveness of his counsel. Accordingly, the judgment of the district court granting habeas corpus relief is

AFFIRMED.

4. Although we find that Hobbs' pretrial investigation was inadequate we note that he also was responsible for securing much of the new evidence used in post-trial proceedings. This appears to illustrate the proposition that even competent counsel may at times provide ineffective assistance.