Orlando **HERNANDEZ**, Petitioner,

v.

Louie L. **WAINWRIGHT**, Respondent.

No. 82–1031–CIV.

United States District Court,
S.D. Florida.

April 30, 1986.

Samuel Mandelbaum, Tampa, Fla., for petitioner.

Richard E. Doran, Asst. Atty. Gen., Dept. of Legal Affairs, Miami, Fla., for respondent.

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

MARCUS, District Judge.

THIS CAUSE has come before the Court on a petition for writ of habeas corpus filed by Orlando Hernandez pursuant to 28 U.S.C. Section 2254 in May, 1982. Petitioner is imprisoned under judgment and sentence by the State of Florida for first degree murder and armed robbery.[1] Petitioner is in the custody of Louie L. Wainwright, Secretary of the Department of Corrections for the State of Florida, although he is currently incarcerated in the United States penitentiary in Marion, Illinois. This petition was referred by the Honorable Edward B. Davis, United States District Judge, Southern District of Florida, to Chief United States Magistrate Peter R. Palermo for a report and recommendation on the merits of Petitioner's claim for relief pursuant to 28 U.S.C. Section 636(b). The matter was subsequently transferred to this Court on August 26, 1985. After conducting a *de novo* review of the trial record, Magistrate Palermo's Report and Recommendation and the briefs of counsel for the respective parties, and after hearing oral argument, this Court has determined that Petitioner has failed to

---

1. This Court has studied all of the materials germane to this petition including the trial transcript and the record of the evidentiary hearing conducted by Magistrate Palermo. References to the trial transcript will be designated by a "T;" references to the evidentiary hearing will be marked by "R."

state any cognizable claims for habeas relief. Accordingly, his petition for writ of habeas corpus must be DENIED.

## I. *Procedural History*

On June 14, 1974, Jose Maya, a jewelry salesman, was robbed, and his wife, Sarah Maya, was murdered by three persons in a Miami Beach apartment building. Petitioner was arrested and following a week-long trial by jury in January 1975, was found guilty of robbery and first degree murder. On February 3, 1975, Judge Siegendorf of the Eleventh Judicial Circuit in and for Dade County, Florida, sentenced Petitioner to a term of life imprisonment for the first degree murder charge and a consecutive term of 99 years imprisonment for the robbery charge. Petitioner appealed his conviction which was affirmed by the Third District Court of Appeal, State of Florida. *Hernandez v. State*, 323 So.2d 318 (Fla. 3d DCA 1975). In January 1982, Petitioner filed a State rule 3.850 motion to vacate his sentence which was denied in February, 1982. This denial was subsequently affirmed by the Third District Court of Appeal, State of Florida. In May, 1982, Petitioner filed the instant petition. At the time of filing, Petitioner was proceeding *pro se.* In the petition, Petitioner pleaded the following six grounds for relief:

1. Denial of effective assistance of counsel;

2. Denial of sanity hearing, and that Petitioner was legally insane at the time of the trial and at the time of the alleged crime;

3. Petitioner was denied the right to be able to understand the proceedings and charges that were leveled against him;

4. Abusive prosecutorial comments denied him the right to a fair trial;

5. The conviction was obtained in violation of the double jeopardy protections of the Fifth Amendment; and, finally

6. The prosecutor knowingly used false testimony.

On June 9, 1983, Petitioner's present counsel filed a notice of appearance and since then has filed various amendments to Petitioner's petition. In November 1983, it was determined that Petitioner's sixth ground had not been exhausted in State court and that his petition was a "mixed petition." Subsequently, Petitioner opted to delete that contention. On June 4, 1984, Petitioner was accorded an evidentiary hearing before Magistrate Peter Palermo with an opportunity to present witnesses. At that hearing Petitioner chose to delete his second ground.

The evidentiary hearing was directed only toward developing the factual basis for Petitioner's claim of a Sixth Amendment violation. (R. 4). On September 25, 1984, Magistrate Palermo entered a 31 page opinion recommending that Petitioner be granted habeas corpus relief only as to ground 5, his double jeopardy claim, and that relief on the remaining contentions, 1, 3 and 4, be denied. Both Petitioner and Respondent have filed detailed and lengthy objections to the Report of the Magistrate with supplemental authority in support of their respective positions. Petitioner challenges the finding of the Magistrate that the ineffective assistance of counsel claim, the first ground of this habeas petition, fails to warrant habeas relief. The Respondent in turn has questioned the Magistrate's ruling that Petitioner is entitled to habeas relief on double jeopardy grounds regarding the imposition of consecutive sentences for murder and for armed robbery (ground five of this petition).

We set this cause down for extensive oral argument by the parties on December 13, 1985. An evaluation of all the records before this Court compels us to deny this petition on all grounds. Despite the Magistrate's Report and Recommendation granting the petition as to the double jeopardy claim, we find that the law mandates a denial of relief on this ground. In sum Petitioner has not demonstrated entitlement to federal habeas corpus relief on any basis.

## II. *Ground One: Ineffective Assistance of Counsel*

Petitioner's first contention is that his retained attorney, Ronald J. Fath, did not

provide adequate representation at trial. Petitioner claims that this deprivation contravened his Sixth Amendment right to effective assistance of counsel. While a criminal defendant is entitled to an attorney "reasonably likely to render and rendering reasonably effective assistance," *Herring v. Estelle*, 491 F.2d 125, 127 (5th Cir.), *reh. denied*, 493 F.2d 664 (5th Cir. 1974), the question of whether counsel rendered reasonably effective assistance must be evidenced by the entire record. *Raulerson v. Wainwright*, 732 F.2d 803, 810 (11th Cir.), *reh. denied*, 736 F.2d 1528 (11th Cir. 1984), *cert. denied*, — U.S. —, 105 S.Ct. 366, 83 L.Ed.2d 302 (1984). "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

In *Strickland, supra*, the United States Supreme Court established a two-part test under which ineffective assistance of counsel claims must be assessed. First, a convicted defendant must show that counsel's performance was deficient. "This requires showing that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland* at 687, 104 S.Ct. at 686. Second, the convicted defendant must demonstrate that this deficient performance prejudiced his defense. The defendant must show that counsel's errors were so serious as to deprive the defendant of a fair trial and to make the result suspect. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

It is with this standard in mind that we must evaluate the alleged deficiencies in the performance of Petitioner's trial counsel. Petitioner has cited both *Strickland v. Washington, supra*, and *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), as authority for his

assertion that Ronald Fath rendered ineffective assistance at Petitioner's trial. In *Cronic, supra*, the Supreme Court fashioned a narrow exception to the two-part test for ineffective assistance of counsel established in *Strickland, supra*. The *Cronic* exception holds that a Sixth Amendment violation exists without a specific showing of prejudice if there are "circumstances that are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic* at 658, 104 S.Ct. at 2046. Thus, for example, "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," *id.* at 659, 104 S.Ct. at 2047, prejudice is presumed without inquiry into the actual conduct of the trial. Other illustrations given by the *Cronic* Court include the failure to provide an accused with counsel at a critical stage of trial or the lack of pre-trial investigation due to denial of a motion for a continuance. "Apart from circumstances of that magnitude however, there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* at 659, n. 26, 104 S.Ct. at 2047 n. 26.

A careful review of all the materials in the instant case yields the conclusion that this situation is not amenable to the *Cronic* presumption of a Sixth Amendment violation. There is nothing in the record before this Court, other than Petitioner's suggestion, to indicate that the *Cronic* exception should obtain.

Petitioner's ineffective assistance of counsel claim must therefore be subjected to the *Strickland* analysis.

Petitioner has cited sixteen specific instances of attorney Fath's conduct which are alleged to be error of constitutional proportion. Those alleged errors committed by Fath are:

1. Counsel was an alcoholic;

2. Counsel was subsequently disbarred;

3. Counsel presented no defense;

4. Counsel failed to object to the admission of a photograph;

5. Counsel failed to conduct any pre-trial investigation of facts;

6. Counsel failed to interview witnesses;

7. Counsel refused to allow the trial judge to give a cautionary instruction to the jury after the prosecutor used the term "bandit;"

8. Counsel was impaired by alcohol during Petitioner's trial;

9. Counsel failed to use an interpreter to communicate with Petitioner;

10. Counsel failed to consult with a fingerprint expert about the reliability of the latent fingerprint found at the scene of the crime;

11. Counsel failed to advise or consult with Petitioner;

12. Counsel failed to file various pre-trial motions;

13. Counsel instructed Petitioner to waive his right to testify;

14. Counsel failed to file a motion for rehearing of the appellate court's affirmance of Petitioner's conviction;

15. Counsel failed to file a petition for certiorari with the Florida Supreme Court; and

16. Counsel failed to supply Petitioner with his files and records so that Petitioner could file a *pro se* petition for certiorari to the Florida Supreme Court.

Petitioner's allegations will be considered in order with related charges consolidated for clarity.

A. *Alcoholism* (Errors One and Eight)

■ Petitioner claims that Fath was an alcoholic and consequently incapable of making trustworthy decisions as to the conduct of Petitioner's defense. Petitioner complains that Fath was drunk during two of their three pre-trial consultations. (R. 52). Petitioner states that he smelled liquor on Fath's breath during the trial. (R. 55). As further evidence of Fath's supposed alcoholism, Petitioner reveals that Fath arrived late for court one day "with his shirt opened, his coat opened, without a necktie." (R. 54). Petitioner's wife has also testified to the odor of alcohol on Fath's breath during a pre-trial meeting. (R. 106, 112). The sum of the evidence of Fath's alleged alcoholism is the testimony of Petitioner and his wife. The trial transcript shows no incapacity on the part of Fath or any concern on the part of the trial court for the presence of an intoxicated lawyer. On this record we cannot conclude that Fath abused the consumption of liquor during this trial.

Even if this Court were to credit the testimony of Petitioner and his wife and determine that the mere presence of alcohol on Fath's breath signified inebriation, Petitioner has not shown how this condition caused Fath to render deficient legal representation or how this state resulted in prejudice to Petitioner's case. *See United States v. Swinehart,* 617 F.2d 336 (3d Cir. 1980) (evidence in hearing sustained finding that counsel had not been inebriated during trial). This Court is mindful that Petitioner bears the burden of proof in a collateral habeas corpus proceeding. It is apparent that Petitioner has not met that burden in regard to the claim of Fath's alcoholism. Moreover an attorney's indulgence in alcohol is not in itself enough to constitute a *per se* Sixth Amendment violation. *Berry v. King,* 765 F.2d 451, 454 (5th Cir.1985) (fact that attorney used drugs during trial not solely determinative of ineffective assistance of counsel claim); *Young v. Zant,* 727 F.2d 1489, 1492 (11th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1371, 84 L.Ed.2d 390 (1985) (petitioner's observations that counsel ingested drugs during trials not automatic support for claim of constitutional ineffectiveness). The critical inquiry for this Court under *Strickland, supra,* is whether, regardless of the cause, Fath's representation of Petitioner was deficient and whether this deficiency prejudiced the Petitioner. Absent a demonstration of these conditions by the Petitioner this Court cannot posit that Fath's alleged drinking problem deprived Petitioner of any constitutional right.

B. *Subsequent Disbarment* (Error 2)

 Petitioner avers that Fath's disbarment in 1980 is additional evidence of Fath's failure to adequately defend Petitioner at his trial in 1975. Fath was disciplined by the Florida Supreme Court in 1979 and 1980 for two counts of neglect of legal matters, and one count of failure to represent a client despite acceptance of a fee.[2] While Petitioner has emphasized the gravity of these proceedings to this Court, Petitioner has not shown any direct nexus between what transpired at his trial in 1975 and Fath's ultimate suspension. Mr. Scott K. Tozian, the sole witness produced by Petitioner at his evidentiary hearing to testify about Fath's disbarment had no knowledge of Fath's legal practices in 1975. Mr. Tozian's affiliation with the Florida Bar Ethics and Discipline Section began in 1978. (R. 14). His contact with Fath was initiated in 1979. (R. 17). Any deterioration in the capacity of Mr. Fath to function as a competent and ethical advocate subsequent to Petitioner's trial in 1975 is of limited value to this Court in determining the merits of Petitioner's Sixth Amendment claim.

Mr. Tozian testified at the hearing that he had attended disciplinary trials in 1979 and 1980, and that Mr. Fath not only smelled of alcohol on those occasions but also appeared "disheveled" and did not seem to pay attention. (R. 22). Mr. Tozian, however, did not observe Mr. Fath's appearance and performance at the time of Petitioner's trial in 1975. (R. 26). Mr. Tozian did refer to a complaint made by a different client of Fath's in 1975. The complaint, for misappropriation of funds, in no way establishes Fath's ineffectiveness at Petitioner's trial. To hold that Fath's performance at Petitioner's trial was necessarily deficient because of a wholly unrelated matter or because of his later problems finds no factual support in this record nor in the caselaw. Based on a review of this record, this Court may not fairly deem

Fath's legal assistance at Petitioner's trial automatically deficient. *Roach v. Martin*, 757 F.2d 1463 (4th Cir.), *cert. denied*, —— U.S. ——, 106 S.Ct. 185, 88 L.Ed.2d 154 (1985) (no prejudice presumed where lead counsel was under investigation for disbarment at time of petitioner's trial); *United States v. Hoffman*, 733 F.2d 596 (9th Cir.), *cert. denied*, —— U.S. ——, 105 S.Ct. 521, 83 L.Ed.2d 409 (1984) (defendant's representation by attorney who was suspended from his home state bar during federal district court trial not *per se* denial of Sixth Amendment right); *United States v. Sielaff*, 542 F.2d 377 (7th Cir.1976) (subsequent disbarment of petitioner's counsel irrelevant to his performance at petitioner's trial). Relief on this ground is therefore denied.

C. *Failure to Conduct Pre-Trial Investigation, Interview Witnesses, Consult Expert Witness and Consult with Petitioner* (Errors Five, Six, Ten, Eleven)

These four specific errors of attorney Fath must be measured against the *Strickland* standard. Petitioner has not shown how these criticisms embody the deficiency and prejudice necessary to state a constitutional claim.

 Petitioner complains that Fath failed to advise him or consult with him. According to Petitioner's own testimony Fath met with him three times prior to trial. (R. 48). It is well settled that counsel may be effective even if he spends only a short period of time with this client. *Jones v. Wainwright*, 604 F.2d 414, 416–17 (5th Cir.1979).

 Petitioner contends that Fath failed to conduct pre-trial investigations. All that Petitioner has offered this Court in support of this contention is his own allegation. At the evidentiary hearing before Magistrate Palermo, Petitioner proffered no witnesses or affidavits disclosing the extent of Fath's discovery efforts. Petitioner has chosen to ignore the distinct possibility that Fath had

---

**2.** *Florida Bar v. Fath*, 368 So.2d 357 (Fla.1979); *Florida Bar v. Fath*, 386 So.2d 787 (Fla.1980); *Florida Bar v. Fath*, 391 So.2d 213 (Fla.1980).

indeed investigated and discovered only the absence of any exculpatory evidence. Moreover, Petitioner has not explicated for this Court how this alleged lack of investigation caused prejudice to his case.

The gist of Petitioner's argument is that if Fath had investigated prior to trial he would have discovered the existence of alibi witnesses and the necessity for consulting a fingerprint expert. Failure of counsel to pursue all avenues of defense "is best characterized as a failure by counsel in the performance of his investigatory duties, which is to be analyzed under *Washington* [citations omitted] rather than as a fundamental breakdown of the adversarial process such that prejudice is presumed under *Cronic.*" *Chadwick v. Green,* 740 F.2d 897, 901 (11th Cir.1984).

Under the *Washington v. Strickland* criterion, it is plain that the instant Petitioner has not demonstrated deficiency or prejudice from the omission of the alibi witnesses or the phantom fingerprint expert.

Petitioner maintains that there were four alibi witnesses willing to testify that he was in Chicago on June 14, 1974, the date of the robbery/murder in Miami Beach. As Petitioner would have it, he apprised Fath of the identities of these four individuals to no avail. (R. 50). It is most significant to this Court that Petitioner produced only one of these four alibi witnesses at the hearing before the Magistrate. Petitioner offered no explanation or affidavits regarding the three outstanding witnesses. Mr. Wesley Gallop, the sole "alibi" witness who testified at the hearing was unable to state that Petitioner had been in his bar in Chicago on the precise date in questions. (R. 153). Gallop testified that Petitioner frequented his bar regularly—"usually about four and five times a week" (R. 149)—but that he couldn't recall seeing Petitioner on the specific day in question "because its been a while." (R. 153). Gallop added that he did not miss seeing the Petitioner "for any length of time around that date," but that Petitioner "could have been gone two or three days." (R. 153). It is manifest to this Court that Mr. Gallop would have been

of exceedingly limited value, at best, as an alibi witness. Fath may not be denigrated because he did not utilize an alibi witness who had no real alibi to offer. *Mays v. Estelle,* 610 F.2d 296 (5th Cir.1980); *Tucker v. Zant,* 724 F.2d 882, 893, n. 11 (11th Cir.1984).

While we recognize that "permissible trial strategy can never include the failure to conduct a reasonably substantial investigation into a defendant's one plausible line of defense," *Weidner v. Wainwright,* 708 F.2d 614, 616 (11th Cir.1983), this was not the situation in the instant case. In *Weidner* a legitimate claim of ineffective assistance of counsel existed since the defendant's retained counsel failed to investigate or utilize witnesses who would have supported defendant's self-defense theory. Similarly in *Smith v. Wainwright,* Case No. 83–136–CIV–T–10 (M.D.Fla, opinion filed October 23, 1985), petitioner established a claim of ineffective assistance of counsel through the failure of his trial attorney to obtain and utilize prior inconsistent statements made by the state's star witness.

Here, Petitioner has not fulfilled his burden of showing this Court the prejudice that ensued from the omission of evidence or testimony. We cannot help but observe that the testimony of Wesley Gallop may have been more damaging to Petitioner than helpful since Mr. Gallop could not place the Petitioner in Chicago on June 14, 1974, the date of the murder. Coupled with the conspicuous absence of any of the other three purported alibi witnesses at the hearing, the evidence before this Court indicates the lack of any viable alibi witnesses. Fath may not be faulted for refusing to exploit the testimony of imaginary or unhelpful witnesses.

■ Petitioner's criticism surrounding the failure of Fath to call a fingerprint expert to rebut the State's identification of his fingerprint is similarly without merit. At trial the State's expert testified that although the fingerprint found at the crime scene was blurred, he could positively identify the fingerprint as that of the Petition-

er. (T. Vol. II, p. 50). At the hearing before Magistrate Palermo Petitioner offered no expert witness to challenge this identification. Petitioner cited a treatise on fingerprint identification which stated that a blurred fingerprint is not always identifiable. (R. 156–57). This Court cannot say that the failure of Fath to introduce such neutral information at trial amounted to a fatal deficiency. Significantly, Petitioner has not offered any expert witnesses or affidavits to bolster his theory that the fingerprint found at the crime scene was beyond accurate identification. Nor has there been a showing that Fath never consulted a fingerprint expert as a prospective defense witness only to learn that the result would not have been helpful. Decisions as to whether to call witnesses or ask particular questions must be regarded generally as tactical matters. *United States v. Rubin*, 433 F.2d 442, 445 (5th Cir.1970), *cert. denied*, 401 U.S. 945, 91 S.Ct. 961, 28 L.Ed.2d 228 (1971). This Court must decline Petitioner's invitation to engage in unguided speculation as to the value of the omitted testimony of hypothetical witnesses.

D. *Failure to Present a Defense, to Object to the Admission of a Photograph into Evidence, to Request a Cautionary Jury Instruction, to File Pre-Trial Motions, and to Advise Petitioner to Testify at Trial* (Errors Three, Four, Seven, Twelve, Thirteen)

Strategic decisions made by trial counsel deserve the deference of this Court. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland v. Washington*, 466 U.S. at 689. This Court may not gainsay the trial tactics of attorney Fath merely because the Petitioner is naturally displeased with his conviction and sentence. Despite the host of errors cited by Petitioner as to the substandard performance of Fath, this Court observes that the trial

record attests to the credible advocacy provided by Fath.

The series of trial errors cataloged by Petitioner must be evaluated in order to determine if Petitioner has overcome the presumption that the challenged actions constituted sound trial strategy.

■ Petitioner claims that Fath's failure to present a defense is clearly without the ambit of reasonable professional assistance. However, the election of defense counsel not to present a defense may indeed be an intelligent choice under the circumstances. *See Tucker v. Francis*, 723 F.2d 1504, 1516 (11th Cir.1984), *aff'd on rehearing, Tucker v. Kemp*, 762 F.2d 1496 (11th Cir.1985). "It is well settled law that counsel will not be regarded constitutionally deficient merely because of tactical decisions." *Griffin v. Wainwright*, 760 F.2d 1505, 1514 (11th Cir.) *reh. denied*, 765 F.2d 1123, 770 F.2d 1084 (11th Cir.1985). In *Tucker v. Francis, supra*, the defense counsel realized the lack of a viable defense after losing a suppression motion. It is eminently reasonable to conjecture that Fath reached the same conclusion in this case. It is apparent from the record that Fath's trial strategy consisted of undermining the State's case against petitioner. Considering Petitioner's inability to show the habeas Court the existence of any palpable defense, it cannot be said that Fath's decision to concentrate the defense on attacking the State's evidence comprised a constitutional deficiency entitling Petitioner to habeas relief. *United States v. Appoloney*, 761 F.2d 520 (9th Cir.), *cert. denied*, — U.S. —, 106 S.Ct. 348, 88 L.Ed.2d 296 (1985) (defense counsel's decision not to put forth defense did not amount to ineffective assistance of counsel).

Petitioner has likewise not established any constitutional infirmity regarding the failure of Fath to file pre-trial motions or the alleged advice of Fath to Petitioner not to testify. Again these tactics must be relegated to the province of intelligent trial strategy in the absence of contrary evidence. *See e.g., Hutchins v. Garrison*, 724

F.2d 1425 (4th Cir.1983), *cert. denied,* 464 U.S. 1065, 104 S.Ct. 750, 79 L.Ed.2d 207 (1984) (advice of counsel not to testify is type of tactical decision that cannot form basis of claim of ineffective assistance of counsel). We reiterate the precept that the burden is on the habeas Petitioner to surmount the presumption of valid trial strategy.

■ Petitioner's challenge to Fath's failure to object to the admission into evidence of a photograph of Petitioner's line-up is also devoid of constitutional dimensions. On direct appeal of Petitioner's conviction, the Third District Court of Appeal specifically ruled that the admission of the photograph into evidence was not erroneous under Florida law. *Hernandez v. State,* 323 So.2d 318 (Fla. 3d DCA 1975). Fath's failure to object to the introduction of admissible evidence does not constitute ineffective representation. *United States v. Costa,* 691 F.2d 1358 (11th Cir.1982).

■ The conduct of Fath in not requesting the trial judge to give a curative instruction to the jury is again within the presumption of sound trial strategy. At trial the state's witness, Jose Maya, the victim of the armed robbery and eyewitness to the murder of his wife, referred to Petitioner as a "bandit." (T. Vol. I, Second Part, p. 211). Fath immediately moved for a mistrial which the court denied. (T. Vol. I, Second Part, pp. 211–14). On this record it is logical to conclude that Fath reasonably determined that the issuance of a special instruction regarding Maya's characterization of Petitioner as a "bandit" would only serve to remind the jury of this description and reemphasize Maya's testimony in the jury's recollection. Fath was undoubtedly cognizant of the negative implications of such a limiting instruction and reasonably chose not to refresh the jury's memory of Maya's term. The extensive cross-examination of Jose Maya by Fath and the motion for a mistrial made by Fath confirm this Court's conclusion that Fath did not render constitutionally defective legal representation by virtue of his decision not to request such an in-

struction. *See United States v. Carter,* 566 F.2d 1265 (5th Cir.), *cert. denied,* 436 U.S. 956, 98 S.Ct. 3069, 57 L.Ed.2d 1121 (1978) (counsel's failure to request limiting instruction on use of co-conspirator's out-of-court statements insufficient to establish charge of ineffective assistance of counsel).

E. *Failure to Use an Interpreter to Communicate with Petitioner* (Error Nine)

■ Another Source of Petitioner's dissatisfaction with his representation by Fath is that Fath did not utilize the services of an interpreter during their pre-trial meetings. Petitioner argues that this failure too abridged his Sixth Amendment right because he and Fath could not engage in any real communications since Petitioner spoke only Spanish and Fath only English. At the hearing before Magistrate Palermo Petitioner stated that an interpreter was present only for one of the three pre-trial interviews he had with Fath. (R. 48). According to Petitioner's narrative he was unable to communicate with Fath at the other two meetings although he did ultimately succeed (apparently through the services of the interpreter provided at trial) to convey to Fath the crucial information regarding the alibi witnesses. (R. 49–50). Petitioner also acknowledged that he did manage to share with Fath his desire to testify before the jury. (R. 56). Viewing this scenario in the light most favorable to Petitioner, this Court cannot find a constitutional violation on these facts.

There is no unqualified constitutional right to counsel able to speak a defendant's native tongue. *Cervantes v. Cox,* 350 F.2d 855 (10th Cir.1965). Here the Petitioner has not shown any nexus between this language barrier and the requisite deficiency and prejudice for a claim of constitutional significance. A language barrier between counsel and client is only one circumstance to consider in assessing the existence of ineffective assistance of counsel. *See e.g., United States ex rel Torres v. Brierton,* 460 F.Supp. 704 (N.D.Ill.1978) (no grounds for habeas relief where de-

fendant was not provided with a Spanish-speaking attorney). While we do not approve of the practice of conducting such pre-trial interviews as prudent advocacy, the Petitioner here has shown no deficiency or prejudice from Fath's failure to have an interpreter present at *all* of the pre-trial conferences. Both Petitioner and his wife have admitted their ultimate success in conveying their messages, i.e., the existence of the alibi witnesses, to Fath. (R. 49, 105). Again this Court notes that the only ostensible alibi witness tendered at the hearing before the Magistrate, Wesley Gallop, provided no alibi. (R. 153). Clearly Petitioner has not demonstrated that the absence of an interpreter at two pre-trial meetings amounted to deficient legal representation resulting in prejudice to his case. Petitioner's quest for habeas relief on this ground must be rejected.

F. *Failure to File Motion for Rehearing of Appellate Court's Affirmation of Petitioner's Conviction; Failure to File Petition for Certiorari with the Florida Supreme Court; Failure to Supply Petitioner with His Files and Records so Petitioner Could File Pro Se Petition for Certiorari to the Florida Supreme Court* (Errors Fourteen, Fifteen, Sixteen)

 Petitioner has leveled a variety of criticisms toward Fath's post-trial representation. The claim of ineffective assistance of appellate counsel is ordinarily a separate issue from a claim of ineffective assistance of trial counsel. *Alvord v. Wainwright,* 725 F.2d 1282 (11th Cir.), *reh. denied,* 731 F.2d 1486 (11th Cir.), *cert. denied,* —— U.S. ——, 105 S.Ct. 355, 83 L.Ed.2d 291 (1984). As Respondent correctly maintains these claims regarding appellate counsel are not exhausted because they were never presented to the State courts and this petition should therefore be dismissed as containing both exhausted and unexhausted claims. *Rose v. Lundy,* 455 U.S. 509, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982). However to dismiss this entire petition at this late stage would not serve the purposes of the exhaustion requirement of Section 2254. "The goal is to have a petitioner travel through each system only once, at most, in his quest for vindication of alleged constitutional errors." *Galtieri v. Wainwright,* 582 F.2d 348, 356 (5th Cir.1978) (en banc). "A district judge, in implementing *Galtieri,* is not mandated to remand for exhaustion of issues that do not reach constitutional dimension though alleged as such." *Simmons v. Wainwright,* 585 F.2d 95, 96 (5th Cir.1978). In *Simmons* petitioner's claim that the prosecutor failed to investigate did not reach a constitutional dimension although the claim of effective assistance of appellate counsel did state a constitutional claim. Here the Magistrate permitted testimony as to the alleged shortcomings of Fath's appellate representation. (R. 58–70). The specific criticisms directed at Fath's performance clearly failed to reach constitutional proportion.

 Petitioner challenges Fath's failure to file a petition for certiorari with the Florida Supreme Court. In *Wainwright v. Torna,* 455 U.S. 586, 102 S.Ct. 1300, 71 L.Ed.2d 475 (1982), the United States Supreme Court held that a defendant is not deprived of effective assistance by his retained counsel's failure to file a timely application for a writ of certiorari from the highest state court. It is obvious to this Court that no constitutional claim is presented by this alleged error. Moreover a petition for rehearing of an appeal is squarely a discretionary appeal and again is within the purview of the rule established in *Wainwright v. Torna, supra.*

 At the hearing before Magistrate Palermo, Petitioner admitted that Fath eventually sent him the records Petitioner sought. (R. 61). Because from the outset Petitioner had no constitutional right to pursue a discretionary review, he may not claim prejudice from his retained counsel's delay in forwarding such files.

Although the requirements of comity and exhaustion would mandate that a petition containing exhausted and non-exhausted claims be dismissed without prejudice, this case embodies several unique circumstances which compel this Court to address the merits. Here the attorney under fire,

Fath, represented Petitioner at trial and on appeal. The testimony adduced before the Magistrate concerned Fath's post-trial actions as well as his performance during trial. Because of the discretionary nature of the review Petitioner was seeking, it is clear to us that Petitioner has failed to state any constitutional claim regarding ineffective assistance of appellate counsel. Consequently there would be no constitutional error for the State courts to remedy should this one aspect of Petitioner's habeas application be remanded for non-exhaustion. Further protraction of this extended habeas petition which was filed in 1982 would little benefit the policies of comity and judicial economy behind the exhaustion rule. Additionally, Petitioner's allegation of ineffective assistance of appellate counsel is totally devoid of merit, thus precluding any reasoned possibility that litigation in the state court could result in relief. For all of these reasons Petitioner's attack on this ground is insufficient to warrant habeas relief.

## G. *Grounds Three and Four*

Independent review of these portions of the Magistrate's Report reveals that the Report correctly states the law and the facts in this case. We therefore adopt the Magistrate's Report and Recommendation that Grounds Three and Four be dismissed as the opinion of this Court.

## III. *Ground Five: Double Jeopardy*

■ Petitioner alleges that his conviction and sentence for murder and for the armed robbery upon which the murder was predicated violate the guarantee against double jeopardy.[3] The double jeopardy clause protects criminal defendants from multiple punishments for the same offense. *Whalen v. United States,* 445 U.S. 684, 688, 100 S.Ct. 1432, 1435, 63 L.Ed.2d 715 (1980). The Magistrate concluded that the double jeopardy clause had been violated by imposition of consecutive sentences

upon the Petitioner for the murder charge and the robbery charge. This Court finds that the Respondent's objections to the Magistrate's Report correctly states the law.

It is well-settled that the double jeopardy clause "protects against multiple punishments for the same offense." *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). The Supreme Court has held that consecutive sentences for felony-murder and the underlying felony are proper when the legislative body responsible has indicated an intent that such sentences be permitted. *Whalen, supra; Missouri v. Hunter,* 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).

With this background before the Court, it seems clear to us that in this case Petitioner properly received a life sentence on the first-degree murder charge and a 99-year sentence for the robbery charge. The sentencing judge, the Honorable Arden Siegendorf, carefully delineated the sentences for the corresponding charges. (T. Vol. IV, 11–12). There is no question that Petitioner was properly sentenced for two discrete offenses.

Florida has long adhered to the traditional rule of *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932) that there is no double jeopardy violation if each statutory offense for which sentence is imposed requires proof of an additional fact which the other does not. A conviction of first degree murder under Fla.Sta. Section 782.04 does not require a robbery but may be based upon premeditation or one of seven statutorily enumerated felonies. Conversely the robbery statute, Fla.Sta. Section 812.13, does not require proof of a killing. "With respect to cumulative sentences imposed in a single trial, the double jeopardy clause does not more than prevent the sentencing court from prescribing greater punishment than the

**3.** The double jeopardy clause of the Fifth Amendment guarantees that "no person shall be subject for the same offense to be twice put in jeopardy of life of limb." U.S. Constitution, Amendment V.

**252**

legislature intended." *Missouri v. Hunter,* 459 U.S. at 366, 103 S.Ct. at 678.

Here the Petitioner was charged with committing two offenses—the premeditated murder of Sarah Maya and the armed robbery of Jose Maya. (T. Vol. III, 137–38). Following his conviction the trial judge properly sentenced Petitioner for each of these offenses. "Where ... a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct ..., a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial." *Missouri v. Hunter* at 368–69, 103 S.Ct. at 679. In *DeLoach v. Wainwright,* 777 F.2d 1524 (11th Cir.1985), the petitioner's sentences for both felony murder and the underlying felony were upheld as not contravening the double jeopardy clause. The Court reasoned:

> In *State v. Enmund,* 476 So.2d 165, No. 66264 (Fla. August 29, 1985), *reh. denied,* October 18, 1985, (unpublished), the Supreme Court of Florida found "sufficient intent that the legislature intended multiple punishments when both a murder and a felony occur during a single criminal episode." Accordingly, under our limited right of review of this issue, we hold that Florida properly convicted and sentenced DeLoach for murder and the underlying felony without violating the double jeopardy clause.

777 F.2d at 1526.

Because Petitioner's situation is so closely analogous to *DeLoach* it is unnecessary for this Court to look beyond this Circuit's pronouncement in *DeLoach.* Petitioner's sentences fail to merit habeas relief.

IV. *Conclusion*

Because Petitioner Orlando Hernandez has failed to show that he is in custody in violation of the Constitution or laws of the United States, this petition for writ of habeas corpus must be DENIED.