**Joseph Anthony SMITH,
Petitioner-Appellant,**

v.

**Eddie YLST, Superintendent,
Respondent-Appellee.**

No. 86–2048.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted June 11, 1987.
Decided Sept. 1, 1987.

Albert W. Brodie, Sacramento, Cal., for petitioner-appellant.

Scott W. Thorpe, Sacramento, Cal., for respondent-appellee.

Before CHOY, and TANG, Circuit Judges, and STEPHENS, Jr.,[*] Senior District Judge.

TANG, Circuit Judge:

Joseph Smith, a California state prisoner, appeals the district court's denial of his habeas corpus petition under 28 U.S.C. § 2254. He contends that he was denied effective assistance of counsel because his attorney was mentally incapacitated during the time of his criminal trial and that the state court had an obligation to conduct, sua sponte, an evidentiary hearing to determine the competency of his counsel. This appeal raises two novel questions but the petitioner's contentions are ultimately un-

---

* Honorable Albert Lee Stephens, Jr., Senior United States District Judge, Central District of California, sitting by designation.

persuasive. The denial of the petition is affirmed.

## BACKGROUND

Joseph Smith shot and killed his ex-wife on January 15, 1978, two days after the dissolution of their marriage. He was tried without a jury and found guilty of first degree murder on October 3, 1978. On October 13, 1978, Smith requested substitution of counsel, based on allegations that his appointed counsel, James Daul, had behaved erratically during the trial. Although the trial judge, Judge Sherwin, found the suggestions "outrageous" he permitted the substitution of a public defender, Paul Ligda. Ligda moved for a new trial on November 9, arguing that Daul had been unable to provide effective assistance of counsel because of his mental condition at the time of trial.

The motion was supported by the declarations of Carl Spieckerman, Daul's associate, Al Farr, a private investigator Daul hired to work on Smith's defense, Malcolm Tipp, a real estate agent who sold the murder victim's home after the crime, Carmen Johnson, Daul's legal secretary, Thomas Bonetta, a cellmate of Smith, and Smith himself. The declarations primarily describe out of court conduct during the time of trial preparation and the trial itself. The declarations attest to Daul's apprehension for his own safety and that of his client because he believed that his client was the target of a murder conspiracy involving the victim's relatives and lover, Willie Lee. Daul informed the trial court of this concern and propounded his conspiracy theory during his opening statement. Daul believed the purpose of the conspiracy was to obtain life insurance on Smith's life, to which the ex-wife was the beneficiary. He did not develop or prove this theory at trial. Daul's investigator stated that Daul smoked marijuana one evening during the course of the trial and that while discussing the case he fluctuated between laughter and stupor. Daul's secretary stated that he told her he was crazy and wanted to go to an insane asylum. Daul's associate said Daul accused him of being part of the conspiracy and of trying to take over his practice. Daul repeatedly expressed concern that people were going to try to kill him, and came to believe that the original murder was related to an alleged drug smuggling conspiracy involving the victim's relatives and lover.

In addition to the declarations, Ligda submitted two psychiatric reports in support of the new trial motion. These reports were based on a review of the declarations described above, not on contact with Daul, and they offered the conclusion that Daul exhibited a paranoid psychotic reaction. The prosecuting attorney who conducted the trial offered a declaration saying that Daul acted no differently than any other criminal defense attorney.

On December 7, 1978, the trial court denied the motion for a new trial, saying that although Daul's behavior had at times been erratic, his conduct had no impact on the trial because the judge had not been influenced by Daul's behavior. The judge found that "even if Daul was having some kind of breakdown, 'the record and my recollection do not show any way in which the trial was distorted or the effectiveness of defense counsel was impaired by whatever condition he had.'"

Smith appealed to the California Court of Appeal, which affirmed his conviction and agreed with the trial court that a claim of ineffective assistance of counsel had to be supported by references to specific acts or omissions with a prejudicial impact on the reliability of the trial. The California Supreme Court denied Smith's petition for certiorari without opinion on April 11, 1980.

Smith filed his federal habeas corpus petition on September 29, 1982, alleging ineffective assistance of counsel and denial of due process in the failure to hold an evidentiary hearing on his attorney's mental competence at the time of his motion for new trial. The district court ordered an evidentiary hearing and denied the petition on April 7, 1986. Smith filed a timely notice of appeal on May 6, 1986 and the district court granted a certificate of probable cause on May 20, 1986.

## ANALYSIS

### Standard of Review

 This court reviews de novo the dismissal of a habeas corpus petition. *Weygandt v. Ducharme,* 774 F.2d 1491, 1492 (9th Cir.1985). Whether a defendant received ineffective assistance of counsel is a legal question reviewed de novo. *Id.* at 1492–93. This court conducts a comprehensive review of a failure to provide a competency hearing, asking whether a reasonable judge should have experienced doubt with respect to competency. *de Kaplany v. Enomoto,* 540 F.2d 975, 983 (9th Cir.1976) (en banc), *cert. denied,* 429 U.S. 1075, 97 S.Ct. 815, 50 L.Ed.2d 793 (1977).

### I. Ineffective Assistance of Counsel

 It is well settled that for a defendant to prevail on a claim of ineffective assistance of counsel, he ordinarily must show (1) specific acts and omissions of counsel that fall below a standard of professional reasonableness, and (2) that these acts "prejudiced" the defendant because there "is a reasonable probability that absent the errors the factfinder would have had a reasonable doubt respecting guilt." *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984). The Supreme Court has emphasized that there is a strong presumption that a lawyer is competent and that presumption must be overcome with concrete evidence. *United States v. Cronic,* 466 U.S. 648, 658, 104 S.Ct. 2039, 2046, 80 L.Ed.2d 657 (1984).

The Court has recognized certain exceptional cases in which prejudice to a defendant need not be shown, but will be presumed. *Id.* at 659–61, n. 28, 104 S.Ct. at 2047–48, n. 28. The examples cited include cases in which counsel is totally absent or not present during a critical stage of the proceedings, *see Geders v. United States,* 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976), in which there is a lack of "meaningful adversarial testing" because of state or government interference, *see Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974) (judge did not allow defense counsel to impeach witness);

*Powell v. Alabama,* 287 U.S. 45, 53 S.Ct. 55, 77 L.Ed. 158 (1932) (judge refused to grant continuance when counsel appointed just days before trial), and in which there is an actual showing of conflict of interest between the defendant and his attorney, *see Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980). In *Cronic,* the Court noted that per se reversal would not be limited to these situations but would also be warranted in cases of the same magnitude. 466 U.S. at 659 n. 26, 104 S.Ct. at 2047 n. 26.

Smith argues that his attorney's mental incapacity is a situation of the same magnitude as a conflict of interest case and that he should therefore be entitled to per se reversal of his conviction. He relies primarily on *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), a conflict of interest case, for his argument that it is unreasonable to expect him to show specific instances of prejudice. In *Holloway* the Court observed that the normal harmless error approach, with a reviewing court assessing the likelihood that specified errors materially affected jury deliberations, cannot be applied in an intelligent, even-handed manner in a conflict case, where the "evil … is in what the advocate finds himself compelled to *refrain* from doing." *Id.* at 490, 98 S.Ct. at 1182 (emphasis in original).

We applied the rule of per se reversal in *Javor v. United States,* 724 F.2d 831, 833 (9th Cir.1984) and held that "when an attorney for a criminal defendant sleeps through a substantial portion of the trial, such conduct is inherently prejudicial and thus no separate showing of prejudice is necessary." Smith argues that an attorney's mental illness must similarly be presumed to prejudice his client's defense.

The district court rejected the invitation to adopt a per se rule that counsel's alleged mental illness is inherently prejudicial. The court reasoned that the mere existence of a loosely described mental illness or condition cannot be assumed to affect legal proceedings unless the condition manifests itself in courtroom behavior. The court also thought the teaching of cases evaluat-

ing somewhat analogous cases of attorneys who are asleep during trial, *see Javor*, 724 F.2d 831; *United States v. Petersen*, 777 F.2d 482 (9th Cir.1985) or who allegedly use drugs during a trial, *see Berry v. King*, 765 F.2d 451 (5th Cir.1985) is that the existence of prejudice must be proved to support an ineffective assistance claim.

The court reasoned that mental illness is too varied in its symptoms and effects to justify a per se reversal rule without evidence that the attorney's performance fell below the constitutional norm. The court was convinced it would need to see a correlation between the alleged mental condition and specific aspects of the attorney's performance of his duties, and thus it applied the *Strickland* test and evaluated the record of the trial to determine whether there were prejudicial errors.

We agree with the district court's analysis. Although there is merit to the argument that a mentally unstable attorney may make errors of judgment that are essentially unidentifiable by a reviewing court, it is reasonable to treat such cases under the general rule requiring a showing of prejudice. Rather than attempt to identify mental illnesses that would presumptively disable an attorney from conducting a criminal defense we believe it is more prudent to evaluate the attorney's actual conduct of a trial in light of allegations of mental incompetence.

This was the approach of the Fifth Circuit in evaluating a claim that a defendant's since deceased counsel had been too old and ill during his trial and appeal to provide effective assistance. *Buckelew v. United States*, 575 F.2d 515 (5th Cir.1978). The court held that the defendants had made no adequate allegation of specific prejudice resulting from their attorney's supposed illness. *Id.* at 521. Similarly, when a defendant claimed his counsel was drunk during his trial a federal district court in Florida held that the habeas petitioner must show how the condition caused counsel to render deficient legal representation or resulted in prejudice to his case. *Hernandez v. Wainwright*, 634 F.Supp. 241, 245 (S.D.Fla.1986), *aff'd*, 813 F.2d 409

(11th Cir.1987). Smith is able to cite only one case, and we have discovered no other, in which a court suggested that mental incapacity might constitute deprivation of effective assistance of counsel. *See United States ex rel Pugach v. Mancusi*, 310 F.Supp. 691 (S.D.N.Y.1970), *aff'd*, 441 F.2d 1073 (2d Cir.1970), *cert. denied*, 404 U.S. 849, 92 S.Ct. 156, 30 L.Ed.2d 88 (1971). The *Pugach* district court noted that alleged acts of incompetence may be of a form which will not be readily apparent to the trial judge, and need not be acts which the court has any duty to correct. 310 F.Supp. at 716. Having said that, the court examined the attorney's conduct at trial and decided that there was not sufficient proof of his mental incompetency. *Id.*

In short, there is no authority for the extension of the per se reversal rule urged by petitioner. We see no compelling reason to depart from the traditional rule that a defendant must point to specific errors or omissions which prejudiced his defense, because if a mental illness or defect indeed has some impact on the attorney's professional judgment it should be manifested in his courtroom behavior and conduct of the trial.

## II. Evidentiary Hearing

The state trial court discounted some of the affidavits presented and relied on its review of the transcript and recollection of the trial to decide that although Daul's behavior had at times been erratic, his conduct had no impact on the trial and that even if Daul were having some kind of breakdown the trial was not distorted and his effectiveness as defense counsel was not impaired. Smith argues that the trial court should have conducted an evidentiary hearing to determine counsel's competency. The federal district court assumed that a hearing should have been conducted, but held there was no prejudice to Smith from the failure to conduct a hearing.

It is a novel question whether due process requires a hearing on an attorney's competence. The argument for such a requirement is largely by analogy to the argument for competency hearings for de-

fendants, and the argument is quite persuasive. What is unclear is the quantum and type of evidence a defendant has to present to trigger such a hearing. It is urged that the applicable standards for an attorney competency hearing should be derived from the statutorily mandated competency hearings for criminal defendants. *See* 18 U.S.C. § 4244; Cal. Penal Code § 1368.

■ The general rule is that whenever there is a good faith doubt as to a defendant's competency a hearing is required. *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836, 15 L.Ed.2d 815 (1966); *de Kaplany*, 540 F.2d 975; *Moore v. United States*, 464 F.2d 663 (9th Cir.1972) (hearing compelled whenever there is substantial evidence that the defendant may be mentally incompetent to stand trial); *People v. Pennington*, 66 Cal.2d 508, 518–19, 58 Cal.Rptr. 374, 381, 426 P.2d 942 (1967) (with substantial evidence of incompetence any conflict in evidence can only be resolved by special trial). To determine the need for a hearing the trial court must look at the record as a whole and accept as true all evidence of possible incompetence. *Chavez v. United States*, 641 F.2d 1253, 1258 (9th Cir.1981).

■ We hold that when there is a question about a defense attorney's mental competence, a hearing is required when there is substantial evidence that an attorney is not competent to conduct an effective defense. Applying the substantial evidence test to this case, under the *de Kaplany* standard of review, we conclude that the decision not to conduct a hearing was not erroneous. Although there was evidence that created a doubt as to Daul's mental stability, there was other evidence precluding doubt. The trial judge weighed the credibility of the affiants and rejected the observations of Daul's associate and investigator; because the psychiatrists' evaluations were based on those individuals' affidavits, the judge rejected them as well. He relied on his own observations of Daul's demeanor at trial and decided not to have a hearing because he did not have substantial doubt about Daul's competency. *Cf. Tanner v. United States*, —— U.S. ——, 107 S.Ct. 2739, 2751, 97 L.Ed.2d 90 (1987) (District Court did not err in deciding, based on inadmissibility of juror testimony and insufficiency of nonjuror evidence, that a post verdict evidentiary hearing on juror competency was unnecessary.).

Smith argues that the trial judge was required to hold a hearing, not to resolve conflicts himself, citing *Moore*, 464 F.2d at 666, for the proposition that once there is evidence raising a reasonable doubt, "there is a doubt that cannot be dispelled by resort to conflicting evidence" and the judge must order an evidentiary hearing. We have determined that *Moore* did not say that:

> doubt necessarily exists, and thus a hearing is required, because certain evidence exists which would create a doubt were it not for other evidence which precludes doubt. Genuine doubt, not a synthetic or constructive doubt, is the measuring rod. The emergence of genuine doubt in the mind of a trial judge necessarily is the consequence of his total experience and his evaluation of the testimony and events of the trial.

*de Kaplany*, 540 F.2d at 982–983. Under this standard, we conclude there was no error in deciding not to hold a hearing because the trial court reasonably found that the evidence did not raise a genuine doubt about Daul's competence.

AFFIRMED.