John Matthew TOOMEY,
Petitioner–Appellant,

v.

Bill J. BUNNELL, Warden,
Respondent–Appellee.

No. 88–6402.

United States Court of Appeals,
Ninth Circuit.

Submitted Feb. 7, 1989.*

Decided March 13, 1990.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth Circuit Rule 34–4 and Fed.R.App.P. 34(a).

John M. Toomey, San Diego, Cal., pro se.

Steven H. Zeigen, Supervising Deputy Atty. Gen., San Diego, Cal., for respondent-appellee.

Before FARRIS, FERGUSON and BEEZER, Circuit Judges.

BEEZER, Circuit Judge, with whom FARRIS, Circuit Judge, joins:

John Toomey appeals the district court's denial of his petition for a writ of habeas corpus. Toomey alleges that his attorney's failure to move for the suppression of certain evidence constituted ineffective assistance of counsel, and that the actions of California police and courts violated his due process rights. We affirm.

I

On May 23, 1982, Toomey was arrested in his automobile for armed robbery in San Diego, California. Toomey does not contend that the arresting officer, Officer Raybould, lacked probable cause. Officer Raybould opened the trunk of the automobile. He saw a large suitcase with money sticking out of one end, and the outline of a revolver visible.

There is some ambiguity about what Raybould did next. He testified at trial that he searched the suitcase at the scene. Toomey contends, on the basis of Raybould's police report, that the search was carried out by Parole Officer Goya the next morning at the police station. The district court assumed the former. The police report indicates that a search was performed at the police station, but Toomey has not supplied the relevant page for the previous evening that would indicate whether Raybould examined the suitcase at the scene of the arrest. In any case, the search revealed substantial evidence linking Toomey to armed robberies in the area.

At the time of the arrest Toomey was on parole. There is ambiguity as to whether he actually signed his "Notice and Conditions of Parole." The form bears his signature, but in the wrong location, and also the notation "Refused to sign—Rules discussed." The notice was a consent form authorizing warrantless search of Toomey and his property at any time by any law enforcement officer.

Toomey's attorney did not move the trial court for suppression of the suitcase evidence. Toomey alleges that he passed a note to his attorney at trial asking why the police had failed to obtain warrants. He received this reply: "It's not required! You are going to have to remember not to play jailhouse lawyer ... Just believe me when I say its [sic] not important—I intend to screw-up so you have some chance on appeal." Toomey's counsel has executed an affidavit stating that "I do not remember the writing of the note but believe the handwriting is mine. I do not know why the very cavalier and somewhat idiotic note was written or what would possess any lawyer, especially your declarant, to write that he intended to screw up a case." The attorney stated, however, that he had not moved to suppress because he knew of Toomey's parole conditions authorizing searches, and felt that a fruitless motion would have had especially adverse consequences if made to that particular trial judge. The attorney did object at trial to admission of the evidence, but indicated to the judge that he made the objection at

Toomey's request to preserve the issue on appeal, and did not consider it meritorious.

Toomey was convicted on August 16, 1982 of several counts of armed robbery, and other offenses, and sentenced to seventeen years and four months in prison. Toomey appealed directly on various grounds not raised in the present petition. On appeal, the convictions were affirmed.

Toomey petitioned in state court for a writ of habeas corpus on the ground that his counsel was ineffective in failing to move for suppression of evidence, and that the evidence had been seized in violation of state search and seizure law. The appellate court denied relief on two grounds: first, even assuming that Toomey's parole waiver was ineffective, the search was lawful because it was incident to a felony arrest; second, Toomey had not demonstrated prejudice from the alleged incompetency of counsel. The California Supreme Court denied the appeal by postcard. Toomey filed a second state petition alleging ineffective assistance of counsel. It also was denied by the state courts.

Toomey then filed a petition in the district court on August 5, 1987, alleging three grounds for federal habeas corpus relief: ineffective assistance of counsel, a fourth amendment violation, and California's violation of his due process by its misapplication of state law. The district court denied the petition on the merits, ruling that: 1) Toomey's counsel was not ineffective in failing to protest the search because it had been held legal under California law; 2) warrantless searches of an automobile's contents with probable cause do not violate the fourth amendment; and 3) Toomey's argument that his constitutional rights were violated by the California courts' alleged failure to apply the state law in force at the time of his arrest was "preposterous."

Toomey timely appeals to this court. Fed.R.App.P. 4(a)(1). We have jurisdiction.

28 U.S.C. § 1291. We review the district court's denial of the petition de novo. *Carter v. McCarthy,* 806 F.2d 1373, 1375 (9th Cir.1986), *cert. denied,* 484 U.S. 870, 108 S.Ct. 198, 98 L.Ed.2d 149 (1987). We review factual findings of the district court for clear error. *Hayes v. Kincheloe,* 784 F.2d 1434, 1436 (9th Cir.1986), *cert. denied,* 484 U.S. 871, 108 S.Ct. 198, 98 L.Ed.2d 150 (1987).

## II

Toomey's principal argument is his claim that his trial counsel was ineffective for failing to move to suppress evidence. Toomey claims that the search of the suitcase was a violation of California constitutional law as of May 23, 1982.[1] *See People v. Ruggles,* 39 Cal.3d 1, 702 P.2d 170, 216 Cal.Rptr. 88 (1985); *People v. Minjares,* 24 Cal.3d 410, 153 Cal.Rptr. 224, 591 P.2d 514, *cert. denied,* 444 U.S. 887, 100 S.Ct. 181, 62 L.Ed.2d 117 (1979). We do not rule on questions of state law. We may consider, however, whether counsel's failure to raise a possible state law argument amounted to a violation of Toomey's sixth amendment right to effective assistance of counsel.

■ A habeas petitioner has the burden of showing that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). The test is that of "reasonably effective assistance" within "the wide range of reasonable professional assistance." *Id.* at 687, 689, 104 S.Ct. at 2064, 2065. If counsel's performance constituted unreasonable professional error, the petitioner must further show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. *Id.* at 694, 104

---

1. *Ruggles* held that a warrantless search of luggage found in an automobile violated the California Constitution. *Id.,* 216 Cal.Rptr. at 94–95, 702 P.2d 170. *Ruggles* and its predecessors applied only to searches performed before June 8, 1982. *Id.* at 94 n. 4, 702 P.2d 170. Proposition 8 amended the California Constitution effective on that date to require the admission of all relevant evidence not barred by the federal exclusionary rule. Cal. Const. Ann. art. I § 28(d) (1983).

S.Ct. at 2068.[2]

■■■ We do not condone the note written by counsel, or the strategy it represents. "Screwing up" in order to allow some grounds for appeal is not a reasonable trial strategy. Toomey's counsel correctly characterizes his own conduct as "idiotic." However, even assuming that the first part of the *Strickland* test is met, we find that Toomey has failed to demonstrate that the result of the proceeding would reasonably have been different. First, the state courts held that the search was lawful, and we do not question their judgment on matters of state law. Second, no fourth amendment violation arose from the search of the automobile or any of its contents, when there was probable cause to believe the automobile contained contraband, whether or not the search was conducted at the scene of the arrest. *United States v. Johns*, 469 U.S. 478, 483–88, 105 S.Ct. 881, 884–87, 83 L.Ed.2d 890 (1985); *United States v. Ross*, 456 U.S. 798, 102 S.Ct. 2157, 72 L.Ed.2d 572 (1982).

■■■ Third, Toomey had waived his privacy interest to be free from searches and seizures as a condition of his parole. Despite some ambiguities on the face of the consent form, Toomey makes an insufficient showing that his signature was forged, as he alleges, or indeed that any refusal to sign the document waived the

condition. We do not approve of general waivers of fourth amendment rights as a condition of parole. *See United States v. Consuelo-Gonzalez*, 521 F.2d 259, 262–63 (9th Cir.1975) (en banc). However, parole searches may be conducted without a warrant under a reasonableness standard. *Id.* The search conducted by Parole Officer Goya, after Toomey had been arrested with probable cause, was reasonable.

In short, we find the prospects of success of the motion to suppress too remote for counsel's failure to have pressed it to have constituted a sixth amendment violation. The connection between a motion to suppress and a reasonable likelihood of a different verdict is even more attenuated.

### III

■■■ Toomey does not argue on appeal that the search violated the fourth amendment. He has expanded his due process claim into an argument that a 1982 California constitutional amendment was an ex post facto law. Toomey's due process and fourth amendment arguments were not raised in state proceedings. Therefore, his petition is mixed. In light of the state's failure to raise nonexhaustion, however, we exercise our discretion to decide that the administration of justice is better served by reaching the merits. *See Granberry v.*

2. The dissent argues that we should apply *United States v. Cronic*, 466 U.S. 648, 104 S.Ct. 2039, 80 L.Ed.2d 657 (1984), instead of *Strickland*. *Cronic* presumes prejudice where there has been an actual breakdown in the adversarial process at trial. *Id.* at 659, 104 S.Ct. at 2047. We have applied the *Cronic* exception very sparingly. *See, e.g., Smith v. Ylst*, 826 F.2d 872 (9th Cir. 1987), *cert. denied,* — U.S. —, 109 S.Ct. 83, 102 L.Ed.2d 59 (1988) (attorney's mental illness was not grounds for per se rule of prejudice).

In this case, Toomey's attorney actively participated in the trial and was so zealous in pursuing his client's rights that he apparently violated ethical rules to give Toomey a chance to succeed on appeal. On similar facts, we have previously declined to apply *Cronic*. In *Harding v. Lewis*, 834 F.2d 853 (9th Cir.1987), *cert. denied,* — U.S. —, 109 S.Ct. 182, 102 L.Ed.2d 151 (1988), the lawyer advised his client to waive his right to counsel, hoping that this might create reversible error in the proceedings. On habeas review, we applied the *Strickland* test and did not presume prejudice for two reasons. First, we

found that the defendant was a knowing participant in the scheme and so was not entitled to habeas relief because the waiver was voluntary. Second, we found that allowing the presumption would create a "foolproof defense." 834 F.2d at 859. Both of these rationales are applicable here.

Toomey's knowledge of his attorney's efforts to "screw up" is proven by the very evidence he is using to demonstrate the sixth amendment violation—the note passed to him from his attorney. Toomey knew what his attorney was doing and constructively participated in this scheme. The second rationale is even more persuasive in this case. If we allow Toomey's counsel to intentionally "screw up" to allow his client to receive a new trial, then the attorney's strategy will create a foolproof defense. All the lawyer needs to do is intentionally fail to raise a frivolous motion to suppress, supply his client with proof of his intentions, and the client is then guaranteed a second trial. We cannot allow such schemes to succeed.

*Greer,* 481 U.S. 129, 133, 107 S.Ct. 1671, 1674, 95 L.Ed.2d 119 (1987); *Ames v. Endell,* 856 F.2d 1441, 1444 (9th Cir.1988).

■ Toomey argues that his due process rights were violated in three ways. First, he contends that the California courts applied Proposition 8 to his case, thus subjecting him to an ex post facto law. Toomey's ex post facto claim is meritless. The prohibition of ex post facto legislation does not apply to changes in state matters of criminal procedure, such as the scope of the exclusionary rule. *See Dobbert v. Florida,* 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977).

■ Second, Toomey argues generally that the California courts violated his due process rights by failing to apply California constitutional law holding pre-Proposition 8 searches unconstitutional under similar facts. Proposition 8 has been held on its face not to violate the due process clause. *California v. Greenwood,* 486 U.S. 35, 44, 108 S.Ct. 1625, 1631, 100 L.Ed.2d 30 (1988). Toomey has no federal constitutional right to have pre–Proposition 8 state case law applied to his case, even if California courts generally have chosen not to apply Proposition 8 retroactively. *See id.; Dobbert,* 432 U.S. at 293, 97 S.Ct. at 2298.

Toomey relies on *Hicks v. Oklahoma,* 447 U.S. 343, 100 S.Ct. 2227, 65 L.Ed.2d 175 (1980). *Hicks* vacated an Oklahoma conviction under a habitual offender statute later declared unconstitutional by a state appellate court, when the same appellate court had affirmed Hicks' conviction despite the admitted unconstitutionality of the statute. The Court found this to be an arbitrary deprivation of a liberty interest protected by the fourteenth amendment. *Id.* at 346, 100 S.Ct. at 2229.

This case is very different. Here, the state courts merely interpreted their criminal procedure case law differently than does Toomey on the scope of California's exclusionary rule. It is difficult to determine the exact grounds of the various state rulings due to their brevity. We see no arbitrary denial of any liberty interest, however, sufficient to allow us to conclude that California courts flouted their state's substantive law in violation of the fourteenth amendment.

Toomey's final due process argument is a claim that California violated his rights as a result of Officer Raybould's testimony contradicting his police report. Since the search was legal whether it was conducted at the arrest scene or at the police station, this discrepancy was completely harmless.

The district court's denial of the petition for a writ of habeas corpus is affirmed.

AFFIRMED.

FERGUSON, Circuit Judge, dissenting in part:

I dissent in part for the reason that defense counsel was deliberately so unscrupulous that the defendant was cheated out of a reasonable defense, in violation of the Sixth Amendment. The conduct of counsel was so outrageous that fraud and deceit were practiced on the criminal defense system.

I.

In the early morning hours of May 23, 1982, two armed suspects robbed a Safeway store in San Diego, California. Witness interviews and a records check focused police suspicions on Toomey as one of the Safeway robbers. Several hours later, local law enforcement officials, without a warrant, stopped and arrested Toomey as he drove away from his residence. The officers then conducted a search of Toomey's vehicle. Upon opening the trunk of the car, Officer Raybould, one of the arresting officers, discovered a partially unzipped suitcase.

What Officer Raybould did next with this suitcase is not clear from the record. Raybould testified at trial that he searched the suitcase at the scene of the arrest. Toomey contrarily contends, based on Raybould's police report and pretrial testimony, that Raybould merely impounded the suitcase and that the initial search was not carried out until the next morning by Too-

mey's parole officer at the police station.[1] In any case, the search of the suitcase revealed evidence, including weapons, clothing, and money, connecting Toomey to the Safeway robbery.

Following Toomey's arrest, police investigations linked Toomey with armed robberies of three other locations—a Food Basket supermarket and two department stores—committed in the San Diego area in May 1982. Toomey was subsequently charged with five counts of armed robbery, one count of attempted robbery, and two counts of auto theft in connection with these robberies.

Toomey's two-day trial consisted entirely of government witnesses linking Toomey to the scene of the robberies through personal observation and circumstantial physical evidence. During the course of the trial, Toomey passed a note to his counsel asking why the police had failed to obtain a warrant before searching his car. Toomey received this handwritten reply: "Its not required! You are going to have to remember not to play jailhouse lawyer but don't fail to ask me every question which comes to mind. Just believe me when I say it is not important—I intend to screw-up so you have some chance on appeal."

While defense counsel did subsequently object, at Toomey's request, to the admission of the contents of the suitcase seized from the trunk of Toomey's automobile, he accompanied this objection with his personal belief that the objection lacked merit. Defense counsel neither called witnesses nor offered any exhibits or evidence on Toomey's behalf. In fact, defense counsel offered nothing more than a closing statement effectively conceding Toomey's guilt on all counts with the exception of those three counts arising out of the Food Basket robbery. Toomey was convicted on all eight counts and sentenced to a prison term of seventeen years and four months.

The state courts affirmed Toomey's convictions on both direct and collateral appeal. On direct review, the state court of appeals affirmed Toomey's convictions against various evidentiary attacks not relevant to this appeal. Toomey thereafter filed two *pro se* state habeas petitions alleging ineffective assistance of counsel and numerous due process violations. Without granting an evidentiary hearing or making specific factual findings, the state courts denied each of Toomey's petitions. Toomey's first petition was denied on the grounds that the police had conducted a valid search of his automobile in connection with a felony arrest and that "he [had] ma[de] no showing how counsel's alleged omissions affected his trial adversely." Denial of Toomey's second petition was premised on the court's finding that "under the law at that time counsel was not ineffective in not bringing a motion to suppress."

After exhausting his state remedies, Toomey filed a *pro se* petition for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. Toomey's petition asserted, *inter alia*, that defense counsel's ineffectiveness deprived him of a reasonable defense in violation of the Sixth Amendment.

The state responded to Toomey's federal habeas petition by denying any constitutional flaws in Toomey's state convictions. Attached to the state's responsive pleading was an affidavit by Toomey's defense counsel discussing the authenticity and contents of the note he had allegedly passed to Toomey during the trial:

I do not remember the writing of the note but believe the handwriting is mine. I do not know why the very cavalier and somewhat idiotic note was written or what would possess any lawyer, especially your declarant, to write that he intended to screw up a case.

---

1. Toomey was serving a one-year parole term as part of a previous state sentence at the time of his arrest. Upon his release to parole, Toomey allegedly signed a parole agreement waiving his Fourth Amendment rights against warrantless property searches by law enforcement officials. Toomey contends, however, that he never signed this waiver. As evidence of the waiver's irregularity, Toomey contends that the signature on the form was a forgery, that this signature appears in the wrong location, and that the bottom of the form includes the notation "Refused to sign—rules discussed."

Defense counsel concluded his affidavit by explaining that he had not moved to suppress the suitcase evidence because, in his judgment, such a motion would have been fruitless given Toomey's parole status.

By written order, the district court summarily dismissed Toomey's petition without evidentiary hearing or oral argument. Finding the search of Toomey's vehicle supported by both federal and state law, the court concluded that Toomey could not have thus suffered any prejudice from his counsel's failure to challenge the suitcase search.

## II.

The defendant's habeas corpus petition states a legally sufficient claim for relief based on allegations that the representation afforded by his court-appointed trial counsel was so fundamentally deficient that it undermined the adversarial guarantees embodied in the Sixth Amendment. This case is about a criminal defendant who was victimized by his attorney, and a criminal justice system that is unwilling to provide any relief.

### 1.

To give content to the Sixth Amendment's guarantee of right to counsel, the Supreme Court has long recognized that counsel's assistance cannot be constitutionally adequate unless effective. *See, e.g., Kimmelman v. Morrison,* 477 U.S. 365, 374, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305 (1986); *Evitts v. Lucey,* 469 U.S. 387, 395, 105 S.Ct. 830, 835, 83 L.Ed.2d 821 (1985); *McMann v. Richardson,* 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970); *Avery v. Alabama,* 308 U.S. 444, 446, 60 S.Ct. 321, 322, 84 L.Ed. 377 (1940). "Because the right to counsel is so fundamental to a fair trial, the Constitution cannot tolerate trials in which counsel, though present in name, is unable to assist the defendant to obtain a fair decision on the merits." *Evitts,* 469 U.S. at 395, 105 S.Ct. at 835; *see also Strickland v. Washington,* 466 U.S. 668, 685, 104 S.Ct. 2052, 2063, 80 L.Ed.2d 674 (1984) ("That a person who happens to be a lawyer is present at

trial alongside the accused, however, is not enough to satisfy the [Sixth Amendment's] constitutional command."). Indeed, our adversary system of criminal justice demands partisan advocacy on both sides of a case to ensure just results. *Penson v. Ohio,* 488 U.S. 75, 109 S.Ct. 346, 352, 102 L.Ed.2d 300 (1988); *Evitts,* 469 U.S. at 394–95, 105 S.Ct. at 834–35 (1985); *Strickland,* 466 U.S. at 685, 104 S.Ct. at 2063 ("The Sixth Amendment recognizes the right to the assistance of counsel because it envisions counsel's playing a role that is critical to the ability of the adversarial system to produce just results."); *Herring v. New York,* 422 U.S. 853, 862, 95 S.Ct. 2550, 2555, 45 L.Ed.2d 593 (1975) ("The very premise of our adversary system ... is that partisan advocacy on both sides of the case will best promote the ultimate objective that the guilty be convicted and the innocent go free."); *see also Gideon v. Wainwright,* 372 U.S. 335, 344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963); *Johnson v. Zerbst,* 304 U.S. 458, 463, 58 S.Ct. 1019, 1022, 82 L.Ed. 1461 (1938); *Powell v. Alabama,* 287 U.S. 45, 68–69, 53 S.Ct. 55, 63–64, 77 L.Ed. 158 (1932).

Constitutionally effective advocacy is therefore defined by counsel's ability to function as a loyal and forceful advocate for the defendant. *See Nix v. Whiteside,* 475 U.S. 157, 189, 106 S.Ct. 988, 1005, 89 L.Ed.2d 123 (1986) (attorneys adopting the role of judge or jury "pose a danger of depriving their clients of the zealous and loyal advocacy required by the Sixth Amendment"); *United States v. Cronic,* 466 U.S. 648, 654, 104 S.Ct. 2039, 2043, 80 L.Ed.2d 657 (1984) (recognizing "core purpose" of sixth amendment's assistance of counsel guarantee as "assur[ing] 'Assistance' at trial, when the accused was confronted with both the intricacies of the law and the advocacy of the public prosecutor") (quoting *United States v. Ash,* 413 U.S. 300, 309, 93 S.Ct. 2568, 2573, 37 L.Ed.2d 619 (1973); *Ferri v. Ackerman,* 444 U.S. 193, 204, 100 S.Ct. 402, 409, 62 L.Ed.2d 355 (1979) ("indispensable element of the effective performance of [defense counsel's] responsibilities is the ability to act independently of the Government and to oppose it

in adversary litigation"); *see also Strickland,* 466 U.S. at 688, 104 S.Ct. at 2064 (representation of criminal defendants includes "overarching duty to advocate the defendant's cause"). Consequently, we recognize representation as constitutionally suspect when counsel's malfeasance upsets the adversarial balance between defense and prosecution to such an extent that we can no longer comfortably rely on the trial as having produced a just result. *See Kimmelman,* 477 U.S. at 374, 106 S.Ct. at 2582; *Strickland,* 466 U.S. at 686, 104 S.Ct. at 2063; *Cronic,* 466 U.S. at 656, 104 S.Ct. at 2045.

To successfully litigate an ineffective assistance of counsel claim, an accused must thus prove that counsel's representation undermined the adversarial process and deprived him of a fair trial. Proof of ineffectiveness may focus on two distinct types of error. When specific errors or omissions form the basis of an ineffective assistance claim, counsel's representation is assessed according to the requirements of the performance-and-prejudice standard of *Strickland v. Washington, supra.*[2] On the other hand, claims concerning conduct affecting the overall integrity of the adversarial process, such as those alleging complete denial of counsel or counsel's "fail[ure] to subject the prosecution's case to meaningful adversarial testing," are governed by *Cronic*'s presumption of prejudice standard. *Cronic,* 466 U.S. at 659, 104 S.Ct. at 2047. *Cronic*-type errors are therefore distinguished by their magnitude and pervasive impact on the adversarial process:

> The right to effective assistance of counsel is thus the right of [an] accused to require the prosecution's case to survive the crucible of meaningful adversarial testing. When a true adversarial criminal trial has been conducted—even if defense counsel may have made demonstrable errors—the kind of testing envisioned by the Sixth Amendment has occurred.

But if the process loses its character as a confrontation between adversaries, the constitutional guarantee is violated.

*Id.* at 656–57, 104 S.Ct. at 2045–46 (footnotes omitted).

### 2.

Applying these principles to the assistance afforded Toomey in this case, it must be concluded that counsel's intent to "screw-up" his trial defense clearly indicate that Toomey has not yet been afforded his constitutional right to have the case against him subjected to the "crucible of meaningful adversarial testing." That is, the contents of the note alone establishes a violation of Toomey's Sixth Amendment right to counsel. The note not only represents irresponsible and unprofessional attorney conduct,[3] it also casts serious doubt on counsel's fulfillment of his obligation to vigorously represent Toomey. Accordingly, counsel's egregious conduct warrants application of *Cronic*'s presumption of prejudice standard.

This conclusion that the circumstances of Toomey's trial defense raise a presumption of prejudice is based on a careful analysis of the text of the note allegedly passed to Toomey during his trial and, to a lesser extent, the conduct of counsel during trial. Counsel's note expressed his unequivocal intent to "screw-up" at Toomey's trial. While the note was passed in response to Toomey's query concerning the warrantless search of his automobile, the text of the note contains no language indicating that counsel's intent to undermine Toomey's defense was confined only to this aspect of the case. Indeed, counsel's comment that Toomey should "ask ... *every* question which comes to mind" raises the contrary inference that counsel was actually pursuing a course designed to infect the entire trial. Finally, while mindful of the difficulties in discerning the scope of coun-

---

2. To succeed under *Strickland,* a defendant must show that counsel's performance was deficient and that without counsel's errors there is a reasonable probability that the result would have been different. *Id.* at 687, 104 S.Ct. at 2064.

3. At the time of Toomey's trial, counsel was ethically obligated to competently and zealously represent the interests of his client. *See Rules of Professional Conduct of the State Bar of California* Rule 6–101; Model Code of Professional Responsibility Canon 7.

sel's stated intent to "screw-up," it is noted that his closing summation virtually abandoned his role as advocate for the defense by effectively conceding Toomey's guilt on all charges except those related to the Food Basket robbery.[4] Given the apparent pervasiveness of counsel's deficient representation, we must take counsel at his word and presume that no aspect of the prosecution's case was put to the crucible of adversarial testing. It is thus appropriate to presume that constitutional error tainted Toomey's trial without any specific showing of prejudice. *See Smith v. Wainwright,* 777 F.2d 609, 620 (11th Cir.1985) (counsel's tactical decision to stand silent and not participate in defendant's trial may create *Cronic* presumption of prejudice); *Martin v. Rose,* 744 F.2d 1245, 1250 (6th Cir.1984) (defense counsel's "total lack of participation" at trial rendered adversary process unreliable and raised presumption of prejudice); *Javor v. United States,* 724 F.2d 831, 833 (9th Cir.1984) (finding inherent prejudice when defense counsel slept through substantial portion of trial); *see also Osborn v. Shillinger,* 861 F.2d 612, 629 (10th Cir.1988).

The district court therefore erroneously dismissed Toomey's Sixth Amendment claim for failure to establish that counsel's deficient trial performance prejudiced his defense. Relying on *Strickland's* performance-and-prejudice standard, the court deemed counsel's representation constitutionally adequate since Toomey could not have been prejudiced by a failure to object to a legally valid search. Left unaccounted for in such a finding is the absence of a zealous advocate throughout the entire trial. As discussed above, counsel expressed no intent to limit his "screw-ups" to the suppression issue. Toomey's counsel did not simply make a poor strategic choice, he

acted with gross disregard for his professional obligation to ensure his client a fair trial. While *Strickland* may well provide an appropriate standard for assessing specific Fourth Amendment-based defense errors, *see, e.g., Kimmelman,* 477 U.S. at 375, 381–83, 106 S.Ct. at 2582, 2586–87, it proves a wholly inappropriate approach for allegations of systemic breakdowns in the adversarial process. *See Cronic,* 466 U.S. at 658–62, 104 S.Ct. at 2046–48 (distinguishing circumstances under which constitutional error may be found absent showing of prejudice because adversarial process rendered presumptively unreliable from those requiring proof of specific errors of counsel which undermined the reliability of the conviction); *Martin,* 744 F.2d at 1250–51; *cf. Penson,* 109 S.Ct. at 354 (no showing of prejudice required when appellate counsel withdrew in midst of proceedings based on assessment that his client's claims lacked merit).

Precisely because of the comprehensive nature of counsel's misconduct, it cannot be said, with any degree of confidence, that Toomey received a fair trial. Requiring Toomey to prove prejudice therefore proves both unnecessary and illogical. Even were one inclined to attempt to ascertain the amount of prejudice arising out of intentionally compromised representation throughout the entire proceeding, those efforts would amount to little more than an exercise in futility. Like a conflict-of-interest situation, the fact that counsel's "screw-ups" could have affected almost any aspect of his preparation and presentation of Toomey's defense makes it "difficult to measure the precise effect ... of representation corrupted by conflicting interests." *Strickland,* 466 U.S. at 692, 104

---

**4.** Defense counsel's closing summation makes repeated references to Toomey's guilt as an armed robber. Counsel began his final remarks by acknowledging that

> we have been here a few days and I haven't had an opportunity to do a lot talking, because there has been a lot of evidence presented which indicates that Mr. Toomey is an armed robber. In fact, on ... [some of the] counts it would be almost impossible not to believe Mr. Toomey was an armed robber. He probably is.

The remainder of his closing argument is devoted almost exclusively to mitigating the strength of the government's evidence on the Food Basket counts. Interspersed with this discussion, however, are numerous references to the "overwhelming" evidence against Toomey with respect to the other three robberies. Counsel concludes his closing argument with this comment: "You have a lot of evidence. It's overwhelming, but its not overwhelming there [on the Food Basket counts]."

S.Ct. at 2067; *see also Cronic*, 466 U.S. at 656 n. 16, 104 S.Ct. at 2045 n. 16; *Holloway v. Arkansas*, 435 U.S. 475, 490, 98 S.Ct. 1173, 1181, 55 L.Ed.2d 426 (1978) ("the evil [of conflicted representation] . . . is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process"); *Glasser v. United States*, 315 U.S. 60, 75–76, 62 S.Ct. 457, 467, 86 L.Ed. 680 (1942) (noting that precise determination of the degree of prejudice suffered by a defendant represented by conflicted counsel "is at once difficult and unnecessary" since "[t]he right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.").

Accordingly, I submit that Toomey's petition states a legally sufficient claim for relief based on ineffective assistance of counsel without specific proof of prejudice.

### III.

Judicial restraint requires a disregard for ideas expressed by those with whom we disagree. But there are times when restraint becomes difficult. So it is with footnote No. 2 in the majority opinion.

When constitutional rights are not enforced by those who have an abhorrence to a "foolproof defense," we must wonder where such a concept originated. If the Constitution provides a "foolproof defense," what judge has a right to complain? A person has a "foolproof defense" (1) when a court acts without jurisdiction; (2) when he is entitled to an attorney, doesn't have one, and never waived the right; (3) when a defendant is not permitted to testify; and (4) in myriad other circumstances which could be listed by high school civics teachers.

When an attorney intentionally "screw[s] up" and harms his client, the way to protect the Constitution is to punish the attorney—at least for contempt of court and by disbarment—not to punish the client for the behavior of his attorney. Our legal system is not without means of handling the challenge posed by any attorney who is willing to provide an explicit record of his intention to "screw up" his client's day in court. We need not fear that the results will be unmanageable if we protect the client's right to constitutionally adequate counsel.

Ironically, the majority labels Toomey's counsel "so zealous in pursuing his client's rights, that he apparently violated ethical rules to give Toomey a chance to succeed on appeal." *Ante* at 744, n. 2. Toomey's rights under the Sixth Amendment are rights to representation at the trial itself, rights in the adversarial process—not "rights" to deliberate and willful "screw-up" which might, in the words of his counsel's note, provide "some chance on appeal." Zealous pursuit of Toomey's rights is exactly what is missing.

Lastly, there is no evidence whatsoever that the defendant "constructively participated" (whatever that means) in the conduct of his attorney. The state does not contend that Toomey consented when his attorney (1) made an objection and then stated his personal belief that it lacked merit; (2) called no witnesses; (3) offered no exhibits; (4) offered no evidence; and (5) in closing argument conceded guilt on all but three counts.

Had Toomey conspired with his attorney to plan these things, of course he would have waived his constitutional right to counsel and his right to a reasonable defense. But if he did not, how can it be claimed that he participated in his attorney's conduct by doing nothing except asserting his constitutional rights by the constitutional method of habeas corpus? *Harding v. Lewis*, 834 F.2d 853 (9th Cir.1987), *cert. denied*, —— U.S. ——, 109 S.Ct. 182, 102 L.Ed.2d 151 (1988), cited by the majority, can hardly be authority for cavalierly disposing of this case. In *Harding*, the defendant waived his right to counsel on the advice of a lawyer. Harding was a conscious participant in the scheme to create reversible error—a co-conspirator. Toomey was not.

Of course, one should not be permitted to play games with justice and then complain when justice wins. Here, however, Toomey did not play games. He is constitutionally entitled to a writ of habeas corpus which permits the state to retry him.