42 F.3d 1400
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
Daniel Matthew KITTSON, Petitioner-Appellant,
v.
Carl ZENON, Superintendent, Oregon State Correctional
Institution, Respondent-Appellee.
 No. 93-35926.
 United States Court of Appeals, Ninth Circuit.
 Submitted April 20, 1994.*
Decided Dec. 16, 1994.
 
 Before: POOLE, BEEZER, and T.G. NELSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 Daniel Matthew Kittson filed a petition for writ of habeas corpus in the district court pursuant to 28 U.S.C. Sec. 2254. He claimed that his trial counsel denied him effective assistance by failing to advise him adequately about testifying at trial. The district court denied the petition. We affirm.
 
 BACKGROUND
 
 3
 Shortly after midnight on the morning of December 7, 1987, Kittson and Ariel Rodriguez argued over a pool game at a tavern. When Kittson left the tavern, Rodriquez, accompanied by Arturo Mendoza and Agapito Jasso, followed Kittson and confronted him in the parking lot. Kittson pulled out a gun. During the ensuing scuffle, Rodriguez was shot and killed. Jasso was shot in the stomach, and Kittson was wounded in his left hand.
 
 
 4
 After a trial in the Circuit Court for Marion County, Oregon, a jury found Kittson guilty of first-degree manslaughter and attempted murder. He also entered a plea of no contest to an additional charge of being an ex-convict in possession of a firearm. Kittson did not testify at his trial.
 
 
 5
 At his deposition for a post-conviction hearing in state court, Kittson stated that his attorney, Robert Abel, had told him that if he testified, the prosecution could introduce his prior convictions.
 
 
 6
 A: [Abel's] strategy in the trial as he told me was to keep me from my background being brought up until I testified in the trial.
 
 
 7
 Q: Did he tell you if you testified that the State would be able to bring out your prior convictions?
 
 
 8
 A: Yes.
 
 
 9
 See Deposition of Daniel Matthew Kittson, Kittson v. Zenon, No. 89-C-10618, at 35 (Oregon, Marion County Cir. May 9, 1991). Kittson also described how the decision not to testify was made.
 
 
 10
 Q: ... You mention that you were not allowed to testify by your trial counsel. Did you ask Mr. Abel if you could testify?
 
 
 11
 A: Yeah. I was told I'd testify for eight straight days, me and my family.
 
 
 12
 Q: Who told you that?
 
 
 13
 A: Mr. Abel.
 
 
 14
 Q: And then what happened?
 
 
 15
 A: I never did.
 
 
 16
 Q: Did you ask Mr. Abel about this?
 
 
 17
 A: Later I did, yeah.
 
 
 18
 Q: You didn't ask him right then when it happened?
 
 
 19
 A: No, I didn't.
 
 
 20
 Q: Why not?
 
 
 21
 A: Because I'm not an attorney or anything, and I was letting--he's supposed to be the professional, this is a murder trial. I was scared, I was letting him handle it.
 
 
 22
 ....
 
 
 23
 Q: Did [your mother] agree with you that it would be a good idea that you testify?
 
 
 24
 A: She was kind of unsure because her not being versed in the law either, she was scared. Mr. Abel was supposed to be the professional in the law. We didn't necessarily agree with some of the things he did, but didn't really--didn't want to take any chances because this is my life involved. He was supposed to be the--
 
 
 25
 Q: So your mother was willing to leave it up to Mr. Abel?
 
 
 26
 A: Had no other choice.
 
 
 27
 Q: How about yourself?
 
 
 28
 A: I didn't feel I had any other choice.
 
 
 29
 Q: Subsequently you decided that was a bad decision?
 
 
 30
 A: Yeah. It's like they told me before I went to the trial, they said--he says, just sit there, don't make any grimacing remarks, don't have any expressions on your face, don't do this, don't do that, the [ ] jury will think this or that. He told me all these things, and it made me scared to breathe just about.
 
 
 31
 Q: So you tried to do what he told you to do?
 
 
 32
 A: Yes.
 
 
 33
 See Kittson Deposition at 8, 38-39.
 
 
 34
 In his habeas petition, Kittson asserts that his testimony would have established his defenses of self-defense and accident. He argues that his counsel improperly advised him not to testify and failed to advise him adequately of his right to testify.
 
 DISCUSSION
 
 35
 We review de novo the district court's denial of a petition for writ of habeas corpus. We presume that the state court's factual findings are correct, pursuant to 28 U.S.C. Sec. 2254(d), unless one of the exceptions enumerated in section 2254(d) applies. Palmer v. Estelle, 985 F.2d 456, 457 (9th Cir.), cert. denied, 113 S.Ct. 3051 (1993). Whether a defendant received ineffective assistance of counsel is reviewed de novo. Smith v. Ylst, 826 F.2d 872, 875 (9th Cir.1987), cert. denied, 488 U.S. 829 (1988).
 
 
 36
 To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy the two-part test set forth in Strickland v. Washington, 466 U.S. 668 (1984). First, a petitioner must establish that defense counsel made an error which falls outside the "wide range of professionally competent assistance." Id. at 690. A petitioner must overcome a strong presumption that counsel rendered adequate assistance. Id. Second, a petitioner must establish that there is a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.
 
 
 37
 Abel's advice that Kittson should not testify was well within the range of sound trial strategy. Cf. Burger v. Kemp, 483 U.S. 776, 791-92 (1987) (counsel acted reasonably when he elected not to put his client on the witness stand). Abel could have reasonably concluded that the risks of letting in evidence of Kittson's prior felony convictions outweighed any potential benefits of his testimony. If Kittson had testified, Oregon Evidence Code Rule 609 would have required the trial court to allow the prosecution to introduce Kittson's prior convictions for the purpose of impeaching his credibility. State v. Venegas, 124 Or.App. 253, 255-56, 862 P.2d 529 (1993), review denied, 318 Or. 351 (1994). In addition, Abel could have anticipated that during cross-examination, the prosecution would have highlighted evidence that was unfavorable to Kittson. For example, there had been testimony that Kittson had asked a friend to supply him with a false alibi and that when Kittson arrived at a hospital for treatment of his wounded hand, he had been placed in restraints because he was drunk and belligerent. Although Kittson might have been able to offer explanations for his prior convictions and the other problematic evidence, there were good reasons to be wary of exposing him to an agressive cross-examination.
 
 
 38
 Kittson overstates the signifigance of his proposed testimony. Kittson maintains that if he had testified, the jury would have understood that the physical evidence was inconsistent with the testimony by the state's witnesses. But defense counsel had already directed the jury's attention to inconsistent and exculpatory evidence during his cross-examination of the state's witnesses and his examination of a pathologist called by the defense.
 
 
 39
 Kittson further claims that Abel made the decision that Kittson would not testify and never explained that only the defendant can relinquish his right to testify. This argument is precluded by our decision in United States v. Edwards, 897 F.2d 445, 446-47 (9th Cir.1990), cert. denied, 498 U.S. 1000 (1990); see also United States v. Nohara, 3 F.3d 1239, 1243-44 (9th Cir.1993). In Edwards, the defendant claimed his attorney had not informed him that he had a right to testify, and counsel admitted he had not consulted with Edwards before deciding not to call him as a witness. At the trial, Edwards never indicated to the court that he desired to testify. We held that a defendant who silently abided by his counsel's decision not to call him as a witness may not invalidate his conviction by claiming he was deprived of his right to testify. Edwards, 897 F.2d at 446-47.
 
 
 40
 An attorney has an ethical obligation to allow his client to decide whether to testify. See American Bar Association, Model Rules of Professional Conduct Rule 1.2(a) (1983). Even if counsel had breached his professional duty and made the decision without consulting Kittson, counsel would not have provided constitutionally defective assistance. Nohara, 3 F.3d at 1243-44. Kittson raised no objection when Abel failed to call him as a witness. His "silence at trial effectively waived his right to testify on his own behalf." Edwards, 897 F.2d at 447; Nohara, 3 F.3d at 1244.
 
 
 41
 AFFIRMED.
 
 
 
 *
 The panel finds this case appropriate for decision without oral argument. Fed.R.App.P. 34(a); 9th Cir.R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this Circuit except as provided by Ninth Circuit Rule 36-3