111 F.3d 139
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Sergio ORTIZ-VILLA, Defendant-Appellant.
 No. 96-50156.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 6, 1997.
Decided April 18, 1997.
 
 1
 Before: D.W. NELSON, TROTT, Circuit Judges, and BRYAN,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Sergio Ortiz-Villa appeals the district court's denial of his motion to suppress evidence. After denial of his motion, he entered a conditional plea of guilty to illegal reentry of a deported alien in violation of 8 U.S.C. § 1326 and to being a felon in possession of a firearm in violation of 18 U.S.C. § 922.
 
 
 4
 First, Ortiz-Villa contends that because the Immigration and Naturalization Service ("INS") did not have sufficient information to ascertain his residence, the "fruit" of the parole search of his residence should have been suppressed. Second, Ortiz-Villa contends that because the INS did not have implied consent to search the residence, and because the officers' security did not justify the search, the rifle recovered during the search should have been suppressed. Third, Ortiz-Villa argues that the invited error doctrine does not preclude his arguments that the district court applied the wrong standard for cause to arrest. We affirm the district court's denial of the defendant's motion to suppress.
 
 FACTUAL BACKGROUND
 
 5
 Ortiz-Villa came to the attention of the INS based on information from the California State Department of Parole that he had stopped reporting to his California state parole officer and that he may have reentered the United States illegally. An agent of the INS began an investigation to determine Ortiz-Villa's location, which included a two-week surveillance of Ortiz-Villa's last known address: 2010 E. 14th St., Long Beach, California ("2010"). This residence is a large family dwelling with at least two floors appearing to be a single dwelling unit. In reality, the building housed two dwelling units, and the address of the upper unit, 2012 E. 14th Street ("2012"), was difficult to see. During the two-week surveillance, the agent never saw Ortiz-Villa enter or exit the residence, but he observed Ortiz-Villa's car parked in front of the home.
 
 
 6
 The INS agent obtained a federal arrest warrant for Ortiz-Villa on the ground that he had illegally reentered the United States. The state parole board also issued a warrant for parole violations. Ortiz-Villa's prior criminal history included resisting arrest and gun charges.
 
 
 7
 When INS agents and state officers went to 2010 to execute the arrest warrant, a woman opened the door and the agents entered, finding Ortiz-Villa's brother in a bedroom with a gun under the bed. The agents could not find an inside way to the second floor. One of the agents stationed outside the residence saw Ortiz-Villa, in his underwear, standing in an upstairs window next to a woman, later determined to be his girlfriend, holding a baby. Several times officers demanded that Ortiz-Villa come downstairs. Ortiz-Villa came to the top of the outside stairwell but refused to come downstairs, and he screamed obscenities. After repeated requests, Ortiz-Villa came down the stairs.
 
 
 8
 Ortiz-Villa properly identified himself, was arrested, and placed in a police car. At this time, the INS agent noticed that the second floor was a separate residence and had a separate address: 2012 E. 14th St. Ortiz-Villa asked his girlfriend to get him some clothes. She turned to go back inside the second floor of the residence. An agent asked her to wait. He then accompanied her into the house for safety and security reasons. Neither Ortiz-Villa nor his girlfriend objected.
 
 
 9
 When the agent and the girlfriend entered the upstairs bedroom, the girlfriend retrieved clothes from a dresser. The agent testified that as he moved to allow the girlfriend to pass in front of him, his leg brushed against a hard object between the mattress and the box spring of the bed. When the INS agent noticed an object that appeared to be a rifle, he called a California parole agent into the room, obtained the state officer's permission for a search, and seized the rifle hidden beneath the mattress.
 
 STANDARD OF REVIEW
 
 10
 We review motions to suppress evidence de novo. United States v. Noushfar, 78 F.3d 1442, 1447 (9th Cir.1996). The determination of probable cause is reviewed de novo. United States v. Linn, 880 F.2d 209, 214 (9th Cir.1989). We review the district court's findings of fact for clear error. Noushfar, 78 F.3d at 1447. "Under the clear error standard, we are bound to accept a lower court's finding of fact unless we have a definite and firm conviction that a mistake has been committed." United States v. Ramos, 923 F.2d 1346, 1356 (9th Cir.1991) (citations omitted).
 
 
 11
 I. Sufficient Cause to Search for Ortiz-Villa at the Residence Where he was Arrested
 
 
 12
 A. Legal Standard for a Parole Search: Probable Cause or Reasonable Suspicion?
 
 
 13
 The parties contend that the Ninth Circuit has articulated two legal standards for a parole[1] search: probable cause and reasonable belief or reasonable suspicion. Ortiz-Villa argues that the proper standard is the probable cause standard. The government contends that making a choice between the two standards is unnecessary because the district court was correct under either standard.
 
 
 14
 In United States v. Watts, 67 F.3d 790, 795 (9th Cir.1995), rev'd on other grounds, --- U.S. ----, 117 S.Ct. 633 (1997), we recognized that "[t]here is some tension among our cases regarding whether a probation search must be supported by probable cause to believe that the probationer resides on the premises or whether a 'reasonable' belief will suffice." We found, however, that, based on the facts of the Watts case, it was not necessary to resolve any such tension between the standards, and we upheld the search using the probable cause standard. Id.
 
 
 15
 In United States v. Harper, 928 F.2d 894, 896 (9th Cir.1991), we held that the police must have probable cause to believe that a suspected parole violator is an actual resident in order to enter the home of a third party to execute an arrest warrant.
 
 
 16
 We also have applied a reasonable belief or reasonable suspicion standard in several probation and parole search cases. E.g., Davis, 932 F.2d at 758 (stating that "[t]he permissible bounds of a probation search are governed by a reasonable suspicion standard"); Toomey v. Bunnell, 898 F.2d 741, 744 (9th Cir.1990) (holding that parole searches may be conducted without a warrant under a reasonableness standard).
 
 
 17
 B. Application of Probable Cause or Reasonable Belief Standard
 
 
 18
 We need not resolve the issue of what standard to apply because in this case, application of either standard results in the same outcome.
 
 
 19
 Ortiz-Villa argues that, because the officers were unaware that 2010 and 2012 were separate and distinct residences, they lacked probable cause to search for him at 2010. Ortiz-Villa's arguments are not persuasive. There was probable cause to believe he resided at 2010, which appeared to be a two-story single family dwelling. The fact that Ortiz-Villa's actual residence was upstairs, and a separate residence from 2010, does not defeat the right to search for Ortiz-Villa under either standard at 2010. When the agents saw Ortiz-Villa upstairs, in his underwear, with a woman and baby, in the same residential building that they had watched for two weeks, reasonably believing it to be part of the same residence, the officers had probable cause to search for and arrest him there. The officers also had reasonable grounds to believe that Ortiz-Villa resided there. The later discovery that the residence at 2012 was separate from 2010 does not render the search unconstitutional under either standard.
 
 C. Invited Error Doctrine
 
 20
 The government argues that Ortiz-Villa is precluded from arguing on appeal that the district court applied the incorrect standard in the ruling on the motion to suppress because the appellant argued the motion using the reasonable belief standard. We decline to address this issue because we have already decided that under either standard, the district court is affirmed.
 
 
 21
 II Justification for the Search of the Residence: Implied Consent and Officer Security.
 
 A. Officer Safety Concerns
 
 22
 The district court found that the agent's intrusion into the residence was lawful on the basis of the agents' safety. The district court found that the agents' safety concerns were justified because the agents knew of the appellant's criminal history involving gun violations, the agents found a gun downstairs, and the agents could assume that the girlfriend would have clear loyalty to Ortiz-Villa.
 
 
 23
 It is reasonable under the Fourth Amendment, and it is not an impermissible invasion of the privacy or personal liberty of an individual who has been arrested, for an officer to take steps to ensure the officer's safety. Maryland v. Buie, 494 U.S. 325, 333 (1990) (recognizing the "interest of the officers in taking steps to assure themselves that the house in which a suspect is being, or has just been, arrested is not harboring other persons who are dangerous and who could unexpectedly launch an attack"); accord Washington v. Chrisman, 455 U.S. 1, 7 (1982) (holding that an officer may accompany an arrested person into the arrested person's residence for the purpose of ensuring officer safety).
 
 
 24
 Ortiz-Villa argues that the security concerns expressed in Chrisman should not be expanded to a third party (his girlfriend), especially when the arrestee, Ortiz-Villa, was secured in the police car. These arguments are not persuasive. The presence of a gun downstairs, the resistance by Ortiz-Villa to arrest, Ortiz-Villa's criminal history, and the potential for his girlfriend to interfere with the arrest of the father of her child gave ample cause for concern. It was appropriate for the officer to accompany the girlfriend into the residence for the safety of the officers. The discovery of the rifle was fortuitous and its seizure was appropriate.
 
 B. Implied consent
 
 25
 The district court also ruled that Ortiz-Villa consented to the search by asking his girlfriend to retrieve his clothing and by failing to object when law enforcement officers accompanied her into the apartment. We do not reach this issue, however, because we hold that the search was permissible on the basis of officer safety concerns.
 
 CONCLUSION
 
 26
 Based on either a probable cause or a reasonable belief standard, the district court's findings of fact support the search for, and arrest of, Ortiz-Villa at 2012 E. 14th Street, Long Beach, California. Because entry for the safety of the law enforcement officers was justified, the seizure of the rifle was valid. It is not necessary to reach either the invited error doctrine or implied consent issues.
 
 
 27
 AFFIRMED.
 
 
 
 *
 Honorable Robert J. Bryan, United States District Judge for the Western District of Washington, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 We have held that there is no constitutional significance between the status of probation or parole for purposes of evaluating a search. United States v. Davis, 932 F.2d 752, 758 (9th Cir.1991)